BRIDGEPORT HOSPITAL v. COMMISSION ON HUMAN
RIGHTS AND OPPORTUNITIES ET AL.
(15059)
(15060)

CALLAHAN, KATZ, PALMER, F. FREEDMAN and M. HENNESSEY, Js.

[2] See footnote 28 of the majority opinion.

Argued December 1, 1994—decision released January 31, 1995

*Michael N. LaVelle,* for the appellant in Docket No. 15059, appellee in Docket No. 15060 (plaintiff).

*Philip A. Murphy, Jr.,* commission counsel, with whom was *Charles Krich,* staff attorney, for the appellee in Docket No. 15059, appellant in Docket No. 15060 (named defendant).

*Jonathan L. Gould* and *Barbara E. Gardner* filed a brief for the Connecticut Employment Lawyers Association as amicus curiae.

KATZ, J. The issue before the court is whether General Statutes § 46a-86,[1] authorizes the award of dam-

---

[1] General Statutes § 46a-86 provides: "COMPLAINT: DETERMINATION; ORDERS; DISMISSAL. (a) If, upon all the evidence presented at the hearing conducted pursuant to section 46a-84, the presiding officer finds that a respondent has engaged in any discriminatory practice, the presiding officer shall state his findings of fact and shall issue and file with the commission and cause to be served on the respondent an order requiring the respondent to cease and desist from the discriminatory practice and further requiring the respondent to take such affirmative action as in the judgment of the presiding officer will effectuate the purpose of this chapter.

"(b) In addition to any other action taken hereunder, upon a finding of a discriminatory employment practice, the presiding officer may order the

ages for emotional distress and attorney's fees for a violation of General Statutes § 46a-60 (a) (1).[2] We conclude that it does not.

The following facts are undisputed. On October 27, 1986, the complainant, Susan Frederick, pursuant to

hiring or reinstatement of employees, with or without back pay, or restoration to membership in any respondent labor organization, provided, liability for back pay shall not accrue from a date more than two years prior to the filing or issuance of the complaint and, provided further, interim earnings, including unemployment compensation and welfare assistance or amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded shall be deducted from the amount of back pay to which such person is otherwise entitled. The amount of any such deduction for interim unemployment compensation or welfare assistance shall be paid by the respondent to the commission which shall transfer such amount to the appropriate state or local agency.

"(c) In addition to any other action taken hereunder, upon a finding of a discriminatory practice prohibited by section 46a-58, 46a-59, 46a-64, 46a-64c, 46a-81b, 46a-81d or 46a-81e, the presiding officer shall determine the damage suffered by the complainant, which damage shall include but not be limited to the expense incurred by the complainant for obtaining alternate housing or space, storage of goods and effects, moving costs and other costs actually incurred by him as a result of such discriminatory practice and shall allow reasonable attorney's fees and costs.

"(d) In addition to any other action taken hereunder, upon a finding of a discriminatory practice prohibited by section 46a-66 or 46a-81f, the presiding officer shall issue and file with the commission and cause to be served on the respondent an order requiring the respondent to pay the complainant the damages resulting from the discriminatory practice.

"(e) If, upon all the evidence, the presiding officer finds that the respondent has not engaged in any alleged discriminatory practice, the presiding officer shall state his findings of fact and shall issue and file with the commission and cause to be served on the respondent an order dismissing the complaint."

[2] General Statutes § 46a-60 (formerly § 31-126) provides in relevant part: "DISCRIMINATORY EMPLOYMENT PRACTICES PROHIBITED. (a) It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, including, but not limited to, blindness . . . ."

General Statutes § 46a-82,[3] filed a complaint with the defendant commission on human rights and opportunities (CHRO) alleging that her former employer, the plaintiff, Bridgeport Hospital, had unlawfully terminated her employment because of her mental condition, depression, in violation of General Statutes § 46a-60 (a) (1). Pursuant to General Statutes § 46a-83,[4] CHRO made

[3] General Statutes § 46a-82 (formerly § 31-127) provides: "COMPLAINT: FILING. (a) Any person claiming to be aggrieved by an alleged discriminatory practice, except for an alleged violation of section 46a-68, may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission. After the filing of a complaint pursuant to this subsection, the commission shall serve upon the person claiming to be aggrieved a notice that: (1) Acknowledges receipt of the complaint and (2) advises of the time frames and choice of forums available under this chapter.

"(b) The commission, whenever it has reason to believe that any person has been engaged or is engaged in a discriminatory practice, may issue a complaint except for a violation of subsection (a) of section 46a-80.

"(c) The commission may issue a complaint if: (1) An affirmative action plan filed pursuant to section 46a-68 is in violation of any of the provisions of section 4-61u or 4-61w, sections 46a-54 to 46a-64, inclusive, section 46a-64c or sections 46a-70 to 46a-78, inclusive; or (2) an agency, department, board or commission fails to submit an affirmative action plan required under section 46a-68.

"(d) Any employer whose employees, or any of them, refuse or threaten to refuse to comply with the provisions of section 46a-60 or 46a-81c, may file with the commission a written complaint under oath asking for assistance by conciliation or other remedial action.

"(e) Any complaint filed pursuant to this section must be filed within one hundred and eighty days after the alleged act of discrimination except that any complaint by a person claiming to be aggrieved by a violation of subsection (a) of section 46a-80 must be filed within thirty days of the alleged act of discrimination."

[4] General Statutes § 46a-83 provides in relevant part: "COMPLAINT: INVESTIGATION; CONCILIATION; DISCLOSURE; SUBPOENA; DEFAULT ORDER. (a) Within ten days after the filing of any discriminatory practice complaint, or an amendment adding an additional respondent, the commission shall cause the complaint to be served upon the respondent together with a notice (1) identifying the alleged discriminatory practice, and (2) advising of the procedural rights and obligations of a respondent under this chapter. The

a finding of reasonable cause to believe that the plaintiff had committed a discriminatory employment prac-

respondent shall file a written answer to the complaint under oath with the commission within thirty days of receipt of the complaint, provided the answer to any complaint alleging a violation of section 46a-64c or 46a-81e shall be filed within ten days of receipt. The executive director of the commission shall refer the same to an investigator to investigate and determine if there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint. The commission may conduct fact-finding conferences during the investigatory process for the purpose of finding facts and promoting the voluntary resolution of complaints. As used in this section and section 46a-84, reasonable cause means a bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint.

"(b) Before issuing a finding of reasonable cause or no reasonable cause, the investigator shall afford each party and his representative an opportunity to provide written or oral comments on all evidence in the commission's file, except as otherwise provided by federal law or any other provision of the general statutes. The investigator shall consider such comments in making his determination. The investigator shall make a finding of reasonable cause or no reasonable cause in writing and shall list the factual findings on which it is based not later than nine months from the date of filing of the complaint, except that for good cause shown, the executive director or his designee may grant a single extension of the investigation of three months. If the investigator makes a determination that there is reasonable cause to believe that a violation of section 46a-64c has occurred, the complainant and the respondent shall have twenty days from receipt of notice of the reasonable cause finding to elect a civil action in lieu of an administrative hearing pursuant to section 46a-84. If either the complainant or the respondent requests a civil action, the commission, through the attorney general or the commission counsel, shall commence an action pursuant to subsection (b) of section 46a-89 within forty-five days of receipt of the complainant's or the respondent's notice of election of a civil action.

"(c) If the investigator issues a finding of no reasonable cause, the complainant may request reconsideration of such finding with the commission not later than fifteen days from the issuance of such finding. The commission shall reconsider or reject within ninety days of the issuance of such finding.

"(d) Upon a determination that there is reasonable cause to believe that a discriminatory practice has been or is being committed as alleged in the complaint, an investigator shall attempt to eliminate the practice complained of by conference, conciliation and persuasion within sixty days of a finding of reasonable cause. The refusal to accept a settlement shall not be grounds for dismissal of any complaint."

tice and, upon the failure of conciliation, certified the matter to a public hearing. A hearing was held on May 5, 1992, before hearing officer John F. Daly, who rendered a final decision in favor of Frederick. The damages awarded by the CHRO hearing officer included $5000 for "pain, humiliation and emotional damages" and an award of attorney's fees to Frederick's private counsel.[5]

The plaintiff appealed CHRO's decision, challenging, inter alia,[6] the $5000 award to Frederick for emotional distress and the award to her private counsel.[7] The trial

[5] Although CHRO represented Frederick in connection with the investigation and actual hearing, the hearing officer allowed into evidence a billing statement that private counsel had submitted for services rendered in connection with the claim. This out-of-court statement was the only evidence presented to support the award of attorney's fees. The plaintiff presents the following as an alternate ground for affirming the trial court's judgment that attorney's fees are not authorized by § 46a-86 (a): "[W]hether an award of private attorney fees was erroneous where the only evidence of such fees was a hearsay document to which proper objection was made at the administrative hearing." Because we conclude that the trial court was correct in denying attorney's fees under the statute, we do not reach the alternate ground.

[6] The plaintiff also had claimed that CHRO was barred from taking any further action on the Frederick complaint after July 1, 1992, because § 46a-82 (a) requires that "[a]ny person claiming to be aggrieved by an alleged discriminatory practice, except for an alleged violation of section 46a-68, may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission. After the filing of a complaint pursuant to this subsection, the commission shall serve upon the person claiming to be aggrieved a notice that: (1) Acknowledges receipt of the complaint and (2) advises of the time frames and choice of forums available under this chapter." The trial court concluded that "the provisions of [General Statutes] § 46a-82a are directory only and have no effect on the viability of complaints that remained unresolved after July 1, 1992. Nor do the provisions of that statute deprive the CHRO of jurisdiction to hear and render decisions on such complaints . . . ." The plaintiff does not seek review of that determination.

[7] The plaintiff's appeal of CHRO's decision is authorized by General Statutes § 46a-94a, which provides: "APPEAL TO SUPERIOR COURT FROM ORDER

court, *Maloney, J.*, sustained the appeal as to the award of attorney's fees but dismissed the appeal as to the award of damages for emotional distress. The plaintiff appealed to the Appellate Court, contesting the validity of the $5000 award for emotional distress, and CHRO appealed, challenging the validity of the trial court's determination on the issue of attorney's fees. We transferred these appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 4023 and conclude that § 46a-86 does not permit either of these awards for a violation of § 46a-60. Accordingly, we reverse the trial court's judgment in the plaintiff's appeal and affirm its judgment in CHRO's appeal.

Although the issues are discussed in separate briefs because they were raised in two separate appeals, whether CHRO, following a finding of a discriminatory employment practice, is authorized to award damages for emotional distress or attorney's fees depends on an examination of the same statute, which we consider in its entirety to ascertain the legislature's intent, and a discussion of overlapping policy considerations underlying the statute. CHRO has presented four primary arguments in support of its hearing officer's award of

OF PRESIDING OFFICER. (a) The commission on human rights and opportunities, any respondent or any complainant aggrieved by a final order of a presiding officer or any complainant aggrieved by the dismissal of his complaint by the commission may appeal therefrom in accordance with section 4-183, except venue for such appeal shall be in the judicial district in which the discriminatory practice is alleged to have occurred or in the judicial district in which such person resides or transacts business. The court on appeal shall also have jurisdiction to grant to the commission, respondent or complainant such temporary relief or restraining order as it deems just and suitable, and in like manner to make and enter a decree enforcing or modifying and enforcing as so modified or setting aside, in whole or in part, the order sought to be reviewed.

"(b) Notwithstanding the provisions of subsection (a) of this section, a complainant may not appeal the dismissal of his complaint if he has been granted a release pursuant to section 46a-101."

both damages for emotional distress and attorney's fees to Frederick. First, CHRO argues that the "affirmative action" language contained within § 46a-86 (a) is sufficiently broad, by its very nature, to authorize the award of damages for emotional distress and attorney's fees. Second, CHRO argues that the judiciary should defer to the interpretation of § 46a-86 by the agency charged with its enforcement and that the twelve year history of CHRO of awarding damages for emotional distress and attorney's fees reflects sound construction of legislative intent. Third, to demonstrate the reasonableness of its decision to apply a broad interpretation of the statute, CHRO points to other state and federal employment legislation pursuant to which similar awards have been made. Finally, CHRO claims that a decision by this court that § 46a-86 does not authorize damages for emotional distress and attorney's fees will render it unconstitutional.

Although CHRO advances some important policy reasons why damages for emotional distress and attorney's fees should be awarded, our function is to ascertain what the legislature intended and to enforce that intent rather than to "substitut[e] [our] own ideas of what might be a wise provision in place of a clear expression of legislative will." *Penfield* v. *Jarvis*, 175 Conn. 463, 474–75, 399 A.2d 1280 (1978). In other words, absent express statutory authorization for the awarding of such damages, the policy arguments of CHRO are an insufficient basis upon which to award them.

We begin our discussion by focusing on the language of the statute. *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 590, 628 A.2d 1286 (1993) ("[i]n construing a statutory provision, we first look to its language, and if that language is plain and unambiguous, 'we need look no further' "). Section 46a-86 provides in pertinent part: "(a) If, upon all the evidence presented at the hearing conducted pursuant to section 46a-84, the

presiding officer finds that a respondent has engaged in any discriminatory practice, the presiding officer shall state his findings of fact and shall issue and file with the commission and cause to be served on the respondent an order requiring the respondent to cease and desist from the discriminatory practice and further requiring the respondent to take such affirmative action as in the judgment of the presiding officer will effectuate the purpose of this chapter.

"(b) In addition to any other action taken hereunder, upon a finding of a discriminatory employment practice, the presiding officer may order the hiring or reinstatement of employees, with or without back pay, or restoration to membership in any respondent labor organization, provided, liability for back pay shall not accrue from a date more than two years prior to the filing or issuance of the complaint and, provided further, interim earnings, including unemployment compensation and welfare assistance or amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded shall be deducted from the amount of back pay to which such person is otherwise entitled. The amount of any such deduction for interim unemployment compensation or welfare assistance shall be paid by the respondent to the commission which shall transfer such amount to the appropriate state or local agency.

"(c) In addition to any other action taken hereunder, upon a finding of a discriminatory practice prohibited by section 46a-58, 46a-59, 46a-64, 46a-64c, 46a-81b, 46a-81d or 46a-81e, the presiding officer shall determine the damage suffered by the complainant, which damage shall include but not be limited to the expense incurred by the complainant for obtaining alternate housing or space, storage of goods and effects, moving costs and other costs actually incurred by him as

a result of such discriminatory practice and shall allow reasonable attorney's fees and costs.

"(d) In addition to any other action taken hereunder, upon a finding of a discriminatory practice prohibited by section 46a-66 or 46a-81f, the presiding officer shall issue and file with the commission and cause to be served on the respondent an order requiring the respondent to pay the complainant the damages resulting from the discriminatory practice."

Subsection (a) is the only subsection of § 46a-86 to which CHRO cites as authority to award damages for emotional distress and attorney's fees following a finding of a discriminatory employment practice. It is the remaining language of § 46a-86, however, that is more instructive. The plaintiff argues that the general language authorizing the hearing officer to issue an "order requiring . . . the respondent to take such affirmative action as in the judgment of the presiding officer will effectuate the purpose of this chapter"; General Statutes § 46a-86 (a); cannot include an authorization to award compensatory damages, other than what is expressly authorized in subsection (b), or attorney's fees because of the express restriction on the availability of such awards to cases brought under the specific statutes enumerated in subsections (c) and (d). We agree.

It is a basic tenet of statutory construction that the legislature "did not intend to enact meaningless provisions." *Turner* v. *Turner*, 219 Conn. 703, 713, 595 A.2d 297 (1991). Accordingly, care must be taken to effectuate all provisions of the statute. See *Pintavalle* v. *Valkanos*, 216 Conn. 412, 418, 581 A.2d 1050 (1990) ("[a] statute should be read as a whole and interpreted so as to give effect to all of its provisions"); *Hopkins* v. *Pac*, 180 Conn. 474, 476, 429 A.2d 952 (1980) (it is a "well established principle that statutes must be construed, if possible, such that no clause, sentence or word

shall be superfluous, void or insignificant"). If compensatory damages and attorney's fees are authorized within the "affirmative action" language of § 46a-86 (a), subsections (c) and (d) are superfluous. Both expressly delineate the availability of compensatory damages. Statutes prohibiting employment discrimination are not included. "It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation." *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 391, 618 A.2d 1340 (1993). " 'Unless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive.' " *State* v. *Kish*, 186 Conn. 757, 766, 443 A.2d 1274 (1982). Thus, the legislature's express exclusion of § 46a-60 from § 46a-86 (c) and (d) evidences its intent not to authorize compensatory damages, other than back pay as provided for in subsection (b), and attorney's fees for employment discrimination.[8]

---

[8] CHRO also asks this court to apply the "private attorney general exception" to allow for attorney's fees. According to *Doe* v. *Heintz*, 204 Conn. 17, 23–24, 526 A.2d 1318 (1987), this exception "would authorize the court to award attorneys' fees to the successful litigant upon a determination that 'the litigation has resulted in the vindication of a strong or societally important public policy, that the necessary costs of securing this result transcend the individual plaintiff's pecuniary interest to an extent requiring subsidization, and that a substantial number of persons stand to benefit from the decision . . . .' *Serrano* v. *Priest*, 20 Cal. 3d 25, 45, 569 P.2d 1303, 141 Cal. Rptr. 315 (1977); see *Miotke* v. *Spokane*, 101 Wash. 2d 307, 340–41, 678 P.2d 803 (1984)." Although we recognize the importance of people being able to work in an environment free of discrimination, this recognition cannot override the legislature's decision to permit these awards only under select discrimination statutes. It is therefore inappropriate for us to establish a broad rule permitting such fees whenever a private litigant has succeeded in enforcing a significant social policy that may benefit others. *Doe* v. *Heintz*, supra, 25.

Legislative history also supports our determination that, unless expressly authorized, compensatory damages and attorney's fees cannot be awarded under § 46a-86. Section 46a-82, formerly § 31-127, was amended by No. 334 of the 1959 Public Acts, requiring CHRO, when it has found an unfair employment practice, "to take such affirmative action, including, but not limited to, hiring or reinstatement of employees, with or without back pay, or restoration to membership in any respondent labor organization, as in the judgment of the tribunal will effectuate the purposes of this chapter."[9] In the absence of any mention of either general compensatory damages or attorney's fees in the discussions surrounding this enactment, it appears that neither was contemplated. Back pay is the only monetary component contained within the statute. Moreover, then Representative Robert Satter, the sponsor of the legislation, responding to an inquiry about the "affirmative action" language, stated that "such further action might mean where a man has been taken off one job and put on another job to ask to be returned to the first job for which he was taken off, or such similar action which within the general employment area cannot be specifically stated in a general statute of this nature." 8 H.R. Proc., Pt. 7, 1959 Sess., p. 2594. Representative Satter's explanation, which suggests that the scope of the term "affirmative action" is more limited than that proposed by CHRO, carries particular weight and deserves careful consideration as the statement of the legislator who reported the bill out of committee. *Manchester Sand & Gravel Co.* v. *South Windsor*, 203 Conn. 267, 275, 524 A.2d 621 (1987). We further note that CHRO originally had virtually identical powers in housing and employment cases. General Statutes (Cum. Sup. 1961) § 53-36, the

---

[9] Our analysis of the legislative history begins with these enactments because they are the predecessors to § 46a-86.

housing discrimination statute, provided that CHRO had "the same powers as provided in chapter 563 in the case of unfair employment practices . . . ." In 1967, the legislature amended § 53-36 to authorize CHRO to award an expansive list of damages and attorney's fees in cases of housing discrimination. Public Acts 1967, No. 756. Once again, if the "affirmative action" language had encompassed compensatory damages or attorney's fees, this amendment would have been unnecessary. To adopt CHRO's interpretation of this phrase would require us to presume that this 1967 legislative enactment was meaningless, a presumption contrary to accepted principles of statutory construction. *Turner* v. *Turner*, supra, 219 Conn. 713.

The enactment of No. 91-58 of the 1991 Public Acts (P.A. 91-58) (Sexual Orientation Discrimination Act) further demonstrates the legislature's continuing intent to limit CHRO's authority to award compensatory damages and attorney's fees. That enactment amended § 46a-86 (c) to grant CHRO the authority to make awards of compensatory damages and attorney's fees to persons discriminated against based on sexual orientation in the areas of associations of licensed persons, public accommodations and housing. See General Statutes §§ 46a-81b, 46a-81d and 46a-81e.[10] That enactment

---

[10] General Statutes § 46a-81b provides: "SEXUAL ORIENTATION DISCRIMINATION: ASSOCIATIONS OF LICENSED PERSONS. (a) It shall be a discriminatory practice in violation of this section for any association, board or other organization the principal purpose of which is the furtherance of the professional or occupational interests of its members, whose profession, trade or occupation requires a state license, to refuse to accept a person as a member of such association, board or organization because of such person's sexual orientation.

"(b) Any association, board or other organization which violates the provisions of this section shall be fined not less than one hundred dollars nor more than five hundred dollars."

General Statutes § 46a-81d provides: "SEXUAL ORIENTATION DISCRIMINATION: PUBLIC ACCOMMODATIONS. (a) It shall be a discriminatory practice in violation of this section: (1) To deny any person within the jurisdiction

also amended § 46a-86 (d) to grant CHRO the author-
ity to make awards of compensatory damages to per-

of this state full and equal accommodations in any place of public accom-
modation, resort or amusement because of such person's sexual orienta-
tion, subject only to the conditions and limitations established by law and
applicable alike to all persons; or (2) to discriminate, segregate or sepa-
rate on account of sexual orientation.

"(b) Any person who violates any provision of this section shall be fined
not less than twenty-five nor more than one hundred dollars or imprisoned
not more than thirty days or both."

General Statutes § 46a-81e provides: "SEXUAL ORIENTATION DISCRIMI-
NATION: HOUSING. (a) It shall be a discriminatory practice in violation of
this section:

"(1) To refuse to sell or rent after the making of a bona fide offer, or
to refuse to negotiate for the sale or rental of, or otherwise make unavail-
able or deny, a dwelling to any person because of sexual orientation.

"(2) To discriminate against any person in the terms, conditions, or priv-
ileges of sale or rental of a dwelling, or in the provision of services or facil-
ities in connection therewith, because of sexual orientation.

"(3) To make, print or publish, or cause to be made, printed or published
any notice, statement, or advertisement, with respect to the sale or rental
of a dwelling that indicates any preference, limitation, or discrimination
based on sexual orientation, or an intention to make any such preference,
limitation or discrimination.

"(4) (A) To represent to any person because of sexual orientation, that
any dwelling is not available for inspection, sale or rental when such dwelling
is in fact so available. (B) It shall be a violation of this subdivision for any
person to restrict or attempt to restrict the choices of any buyer or renter
to purchase or rent a dwelling (i) to an area which is substantially popu-
lated, even if less than a majority, by persons of the same sexual orienta-
tion as the buyer or renter, (ii) while such person is authorized to offer for
sale or rent another dwelling which meets the housing criteria as expressed
by the buyer or renter to such person and (iii) such other dwelling is in an
area which is not substantially populated by persons of the same sexual
orientation as the buyer or renter. As used in this subdivision, 'area' means
municipality, neighborhood or other geographic subdivision which may
include an apartment or condominium complex.

"(5) For profit, to induce or attempt to induce any person to sell or rent
any dwelling by representations regarding the entry or prospective entry
into the neighborhood of a person or persons of a particular sexual orien-
tation.

"(6) For any person or other entity engaging in residential-real-estate-
related transactions to discriminate against any person in making avail-
able such a transaction, or in the terms or conditions of such a transac-
tion, because of sexual orientation.

ons discriminated against based on sexual orientation in credit practices. See General Statutes § 46a-81f.[11]

"(7) To deny any person access to or membership or participation in any multiple-listing service, real estate brokers' organization or other service, organization, or facility relating to the business of selling or renting dwellings, or to discriminate against him in the terms or conditions of such access, membership or participation, on account of sexual orientation.

"(8) To coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this section.

"(b) The provisions of this section shall not apply to (1) the rental of a room or rooms in a unit in a dwelling if the owner actually maintains and occupies part of such unit as his residence or (2) a unit in a dwelling containing not more than four units if the owner actually maintains and occupies one of such other units as his residence.

"(c) Nothing in this section limits the applicability of any reasonable state statute or municipal ordinance restricting the maximum number of persons permitted to occupy a dwelling.

"(d) Nothing in this section prohibits a person engaged in the business of furnishing appraisals of real property to take into consideration factors other than sexual orientation.

"(e) Notwithstanding any other provision of this chapter, complaints alleging a violation of this section shall be investigated within one hundred days of filing and a final administrative disposition shall be made within one year of filing unless it is impracticable to do so. If the commission on human rights and opportunities is unable to complete its investigation or make a final administrative determination within such time frames, it shall notify the complainant and the respondent in writing of the reasons for not doing so.

"(f) Any person who violates any provision of this section shall be fined not less than twenty-five nor more than one hundred dollars or imprisoned not more than thirty days, or both."

[11] General Statutes § 46a-81f provides: "SEXUAL ORIENTATION DISCRIMINATION: CREDIT PRACTICES. (a) It shall be a discriminatory practice in violation of this section for any creditor to discriminate on the basis of sexual orientation, against any person eighteen years of age or over in any credit transaction.

"(b) No liability may be imposed under this section for an act done or omitted in conformity with a regulation or declaratory ruling of the commissioner of banking, the Federal Reserve Board or any other governmental agency having jurisdiction under the Equal Credit Opportunity Act, notwithstanding that after the act or omission the regulation or declaratory ruling may be amended, repealed or determined to be invalid for any reason."

This recent effort to add particular types of discrimination to § 46a-86 (c) and (d) is significant. As an initial matter, it reinforces the conclusion that the legislature did not intend the term "affirmative action" to encompass compensatory damages or attorney's fees, and that it was necessary to include these provisions explicitly within the protective scope of § 46a-86 (c) and (d). Of even greater import is its obvious exclusion from the coverage of § 46a-86 (c) and (d) of any discriminatory practice prohibited by § 46a-81c, which prohibits sexual orientation discrimination in employment.[12] By differentiating among the various provisions of §§ 46a-81b, 46a-81c, 46a-81d, 46a-81e and 46a-81f, all of which became law upon the passage of P.A. 91-58, § 46a-86 (c) and (d) reflect a clear intention by the legislature to restrict the scope of both subsections to only certain types of discrimination. See *State* v. *Kish*, supra, 186 Conn. 766 (statutory itemization indicates legislative intent to exclude unenumerated items).

---

[12] General Statutes § 46a-81c provides: "SEXUAL ORIENTATION DISCRIMINATION: EMPLOYMENT. It shall be a discriminatory practice in violation of this section: (1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's sexual orientation, (2) for any employment agency, except in the case of a bona fide occupational qualification or need, to fail or refuse to classify properly or refer for employment or otherwise to discriminate against any individual because of the individual's sexual orientation, (3) for a labor organization, because of the sexual orientation of any individual to exclude from full membership rights or to expel from its membership such individual or to discriminate in any way against any of its members or against any employer or any individual employed by an employer, unless such action is based on a bona fide occupational qualification; or (4) for any person, employer, employment agency or labor organization, except in the case of a bona fide occupational qualification or need, to advertise employment opportunities in such a manner as to restrict such employment so as to discriminate against individuals because of their sexual orientation."

Moreover, the phrase "affirmative action" is a term of art used to describe possible steps for employers to take in recruitment and hiring to eliminate employment barriers to minorities. *Mele* v. *United States Dept. of Justice*, 395 F. Sup. 592, 595 (D.N.J. 1975), aff'd sub nom. *Mele* v. *Equal Employment Opportunity Commission*, 532 F.2d 747 (3d Cir. 1976). When the phrase "affirmative action" was used in Title VII of the Civil Rights Act of 1964,[13] it did not mean compensatory damages, other than back pay, or punitive damages. *Cosby* v. *United States*, 472 F. Sup. 547, 553 (S.D. Ohio 1979).[14] It referred to prospective relief that goes beyond make whole remedies and requires employers

---

[13] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 e-5 (g) (1), provided: "[T]he court may enjoin the respondent . . . and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."

[14] In denying such relief under that act, the court in *Walker* v. *Ford Motor Co.*, 684 F.2d 1355, 1364 (11th Cir. 1982), superseded by statute as stated in *Cardin* v. *VIA Tropical Fruits*, 7 Fla. L. Weekly Fed. D 456 (S.D. Fla. 1993), relied upon three grounds: (1) the language of Title VII limits relief to reinstatement with or without back pay and other equitable relief; (2) the federal fair housing laws specifically include compensation damages, yet Title VII, which has been amended since the passage of the fair housing laws, does not include them; and (3) " 'the very detailed provisions of [Title VII] almost compel the conclusion that Congress intentionally left out any provision for either general or punitive damages.' " *Walker* v. *Ford Motor Co.*, supra, 1364; see *Carrero* v. *New York City Housing Authority*, 890 F.2d 569, 581 (2d Cir. 1989) ("neither compensatory nor punitive damages are recoverable under Title VII"), superseded by statute as stated in *Natale* v. *Mount Sinai Medical Center*, 62 Empl. Prac. Dec. (CCH) ¶ 42,480 (S.D.N.Y. 1993); *Padway* v. *Palches*, 665 F.2d 965, 968 (9th Cir. 1982) (neither compensatory nor punitive damages available); *Farmer* v. *ARA Services, Inc.*, 660 F.2d 1096, 1107 (6th Cir. 1981) (compensatory damages not available); *Shah* v. *Mt. Zion Hospital & Medical Center*, 642 F.2d 268, 272 (9th Cir. 1981) (emotional distress damages not authorized by Title VII). Because our analysis of § 46a-86 identifies the same considerations as set forth in *Walker*, we are guided by its holding.

to undertake such efforts in hiring minority employees to enforce equal opportunity fully. *Local 28 of the Sheet Metal Workers' International Assn.* v. *Equal Employment Opportunity Commission*, 478 U.S. 421, 448-49, 106 S. Ct. 3019, 92 L. Ed. 2d 344 (1986). Prior to the passage of the Civil Rights Act of 1991, Pub. L. No. 102-166, in which Congress expressly authorized the awarding of compensatory and punitive damages, such damages were not available for violations of Title VII. Because "we are properly guided by the case law surrounding federal fair employment legislation"; *Civil Service Commission* v. *Commission on Human Rights & Opportunities*, 195 Conn. 226, 230, 487 A.2d 201 (1985); particularly when the federal provision is so similar, we recognize the federal decisions concluding that neither compensatory damages, other than back pay, nor emotional distress damages were available under Title VII as originally enacted. See *Landgraf* v. *USI Film Products*, 511 U.S.    , 114 S. Ct. 1483, 1491, 128 L. Ed. 2d 229 (1994); *United States* v. *Burke*, 504 U.S. 229, 238-39, 112 S. Ct. 1867, 119 L. Ed. 2d 34 (1992).

The trial court did not independently conduct this type of analysis in concluding that damages for emotional distress were included within the phrase "affirmative action" in § 46a-86 (a). Rather, the court deferred to the construction of the statute given by the administrative agency charged with its enforcement and remarked upon the consistency with which CHRO has awarded such damages.[15] Citing to one of its own deci-

---

[15] The trial court also considered the issue of whether there existed substantial evidence to support CHRO's award of damages. Citing to *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 593, 590 A.2d 447 (1991); *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 216 Conn. 627, 639, 583 A.2d 906 (1990), and *Lieberman* v. *State Board of Labor Relations*, 216 Conn. 253, 261-62, 579 A.2d 505 (1990), the court recognized its limited scope of review of an administrative agency's findings of fact and concluded that the plaintiff had caused the complainant's

sions in which it had found that CHRO's interpretation of § 46a-86 (a) was "somewhat strained but not implausible,"[16] the trial court acquiesced in CHRO's determination that the statute authorizes compensatory damages.[17] This deference was misplaced.

We recognize our usual rule of according deference to the construction given a statute by the agency charged with its enforcement. *Anderson* v. *Ludgin*, 175 Conn. 545, 555, 400 A.2d 712 (1978). Deference may be appropriate when the issue is the application of general statutory language to a particular fact-bound controversy. As we have stated many times, "the factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts; see General Statutes § 4-183 (g); *Board of Aldermen* v. *Bridgeport Community Antennae Television Co.*, 168 Conn. 294, 298–99, 362 A.2d 529 (1975); *Westport* v. *Norwalk*, 167 Conn. 151, 355 A.2d 25 (1974); 2 Am. Jur. 2d, Administrative Law §§ 645, 675; [however,] it is for the courts, and not for administrative agencies, to expound and apply governing principles of law. *N.L.R.B.* v. *Brown*, 380 U.S. 278, 291, 85 S. Ct. 980, 13 L. Ed. 2d 839 (1965); *International Brotherhood of Electrical Workers* v. *N.L.R.B.*, 487 F.2d 1143,

---

emotional distress. Because we conclude that § 46a-86 (a) does not authorize the awarding of compensatory damages, we need not examine the record to decide if the award would otherwise have been factually justified.

[16] See *Silhouette Optical Ltd.* v. *Commission on Human Rights & Opportunities*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-92-520590 (January 27, 1994, 10 Conn. L. Rptr. 599).

[17] We note that the trial court would not defer to CHRO's determination on the issue of attorney's fees because "general principles of statutory construction lead to the conclusion that such damages are not authorized by subsection (c) of General Statutes § 46a-86 in employment discrimination cases. . . . [T]he list of cases qualifying for such awards, in that subsection, is exclusive and does not include employment discrimination cases. . . . [S]ubsection (a) of § 46a-86 does not authorize the award of attorney's fees in employment discrimination cases because subsection (c) has, in effect, preempted that subject."

1170–71 (D.C. Cir. 1973), aff'd sub nom. *Florida Power & Light Co.* v. *International Brotherhood of Electrical Workers*, 417 U.S. 790, 94 S. Ct. 2737, 41 L. Ed. 2d 477 (1974); 73 C.J.S., Public Administrative Bodies and Procedure § 69." (Internal quotation marks omitted.) *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 342–43, 435 A.2d 353 (1980); *Board of Education* v. *State Board of Labor Relations*, 201 Conn. 685, 698–99, 519 A.2d 41 (1986). We recently modified this rule in *Starr* v. *Commissioner of Environmental Protection*, 226 Conn. 358, 376, 627 A.2d 1296 (1993), wherein we stated that a trial court may properly give deference to the agency charged with enforcement of a statute when there are two equally plausible interpretations of the statutory language. Based upon our reading of the statute as stated earlier in this opinion, it is not plausible that the legislature intended the phrase "affirmative action" to include compensatory damages or attorney's fees.

Finally, special deference was improper because CHRO's determination that the phrase "affirmative action" included compensatory damages and attorney's fees confronted the trial court with a question of law that had not previously been subject to judicial scrutiny. *Dept. of Administrative Services* v. *Employees' Review Board*, 226 Conn. 670, 679, 628 A.2d 957 (1993) ("when a state agency's determination of a question of law has not previously been subject to judicial scrutiny, as in this case, the agency is not entitled to special deference"); *Quinnipiac Council, Boy Scouts of America, Inc.* v. *Commission on Human Rights & Opportunities*, 204 Conn. 287, 295, 528 A.2d 352 (1987) ("deference [to an administrative decision] is unwarranted when the question is the construction of a statute on an issue that has not previously been subjected to judicial scrutiny"). The trial court's reliance on CHRO's interpretation was inappropriate.

While we recognize that a hearing officer has broad authority to construct remedies for employees who have suffered discrimination in the workplace, this power can be exercised only to accomplish the remedial purpose of the statute, which is to " 'restore those wronged to their rightful economic status absent the effects of the unlawful discrimination.' " *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 484, 559 A.2d 1120 (1989). We agree with the well expressed limitations placed on § 46a-86 (a) by the trial court in *Fenn Mfg. Co.* v. *Commission on Human Rights & Opportunities*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV92-509435 (February 8, 1994), aff'd, 232 Conn. 117, 652 A.2d 1011 (1995). The trial court stated: "This language does not confer on the CHRO the power to impose exemplary or punitive damages on a discriminating employer, nor even to compensate the employee for any consequential or incidental damages he or she may have suffered by reason of the employer's discriminatory conduct. Instead, it directs the CHRO to ensure that whatever remedy is fashioned for the employee be designed to return him or her to the same economic status he or she would have had in the workplace if unlawful discrimination never occurred. This, of course, requires that consideration be given to placing the employee in a position which is 'the functional equivalent of the position' he or she would have occupied had there been no unlawful discrimination, and that he or she be 'accorded all the rights and privileges appertaining thereof . . . includ[ing] the right to be considered for additional promotional possibilities on the same footing as' other similarly situated persons who have suffered no discrimination. *Civil Service Commission* v. *CHRO*, supra, [195 Conn. 231].[18] It also

---

[18] In *Civil Service Commission* v. *Commission on Human Rights & Opportunities*, supra, 195 Conn. 230–31, we examined the options available to

requires . . . that consideration be given to award-ing monetary relief to any employee who cannot other-wise be restored to the economic status he or she would have had were it not for the discriminatory conduct in question. Apart, however, from closing any financial gap which is directly related to workplace status, such as pay rates, bonuses and benefits . . . [and] absent express statutory authorization for the awarding of such [monetary relief] damages, as is explicitly made for public accommodations cases in General Statutes § 46a-86 (c), no such damages can be awarded in an employment discrimination case under the 'affirmative action' clause of § 46a-86 (a)." Id.

CHRO also argues that because of the remedial nature of § 46a-86, we should look to other related stat-utes and to the common law governing wrongful ter-mination of employment in order to provide that which is conspicuously absent from the provision in issue. CHRO, in effect, asks us "to borrow" the authority from these other related sources because there is "an overlapping of remedial purpose in wrongful discharge situations which should logically extend to the award-

---

the hearing officer, pursuant to § 46a-86 (a) to put the complainant "on a par with" a coemployee who got the promotion they both sought follow-ing their employer's use of a discriminatory tie-breaking method to chose between them. Rather than force the employer to create a new position or bump the innocent beneficiary of their employer's unlawful conduct, and because the complainant in the interim had been promoted, we recognized the appropriateness of awarding back pay or pay differentials to remedy employment discrimination when such relief is needed to restore the com-plainant to the position in which he would have been had the discrimina-tory practice not taken place. Similarly, in *State* v. *Commission on Human Rights & Opportunities*, supra, 211 Conn. 481, we upheld the decision to award monetary relief to a male retiree whose pension benefits in the early years of his retirement had been unlawfully made lower than those of simi-larly situated female retirees by the employer's use of a sex-based actuar-ial table. Payment of all monies the retiree would have received had his benefits been calculated properly by the use of a unisex actuarial table was "plainly command[ed]" by General Statutes § 31-127, now codified at § 46a-86 (a). Id.

ing of emotional distress damages for claimed violations of . . . § 46a-60 . . . ."[19]

CHRO points to General Statutes § 46a-104 as an example of a statute that reflects the legislature's concern that employees who have suffered discrimination receive full compensation. The enactment of this statute strongly indicates, however, that the legislature did not intend to authorize CHRO to award such damages. Section 46a-104, entitled "Civil action for discriminatory employment practice: Relief," provides: "The court may grant a complainant in an action brought in accordance with section 46a-100 such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs." This express authorization to the court was given by the legislature in 1991, at the same time that § 46a-86 (c) and (d) were amended to provide for compensatory damages, and attorney's fees for certain specific forms of discrimination. Had the legislature intended to give CHRO that same power, it was certainly free to do so. Its continued silence shows it had no such intent. "Statutory analogies may furnish guidance in filling a void in the law, but cannot be utilized to extend a statute tailored for a precisely defined situation to others not included within its terms." *Doe* v. *Heintz*, 204 Conn. 17, 27, 526 A.2d 1318 (1987). Therefore, we cannot simply interpolate one statute into another to include "what might be a wise provision in place of a clear expression of legislative will." *Penfield* v. *Jarvis*, supra, 175 Conn. 475. The passage of a separate act granting the power to the court to award compensatory damages provides no justification for reading into § 46a-86 (a) the authority for CHRO to award such damages.[20]

---

[19] This argument implicitly acknowledges that § 46a-86 (a) does not state what CHRO has suggested.

[20] The legislature has in other circumstances authorized the court, and not the administrative agency charged with enforcing an employee's rights,

Finally, CHRO argues that the denial of compensatory damages, other than back pay as expressly authorized by § 46a-86 (b), and attorney's fees to Frederick would violate the equal protection clause of the Connecticut constitution.[21] It claims that because a violation of General Statutes § 46a-58 is included in the list of statutes within § 46a-86 (c) for which compensatory damages and attorney's fees may be awarded, CHRO must be authorized to award the same relief for a violation of § 46a-60 based upon mental disability in order to withstand constitutional challenge.

Section 46a-58 (a) makes it unlawful to subject any person "to the deprivation of any rights, privileges or immunities, secured or protected by the . . . laws of this state or of the United States, on account of religion, national origin, alienage, color, race, sex, blindness or physical disability." In that statute, the legislature has provided protections for all classes of persons enumerated in the Connecticut constitution, article first, § 20, as amended, with the exception of ancestry and mental disability. Applying the strict scru-

to award compensatory and/or punitive damages. See, e.g., General Statutes § 31-290a (b) (1) and (2) (employee alleging discrimination on basis of exercise of rights under Workers' Compensation Act may collect compensatory and/or punitive damages before court but may not collect either before workers' compensation commission); General Statutes § 31-68 (aggrieved employee of department of labor able to get double damages only if civil action is brought). CHRO also points to decisions of the state board of labor relations interpreting the "affirmative action" language in General Statutes § 31-107 (c) to provide for attorney's fees. As we have stated, because "it is for the courts, and not for administrative agencies, to expound and apply governing principles of law," such deference is inappropriate. *Wilson* v. *Freedom of Information Commission,* supra, 181 Conn. 343.

[21] Our state constitution provides that "[n]o person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability." Conn. Const., amend. XXI.

tiny test,[22] CHRO argues that there is no compelling state interest to provide fewer remedies for persons based on ancestry or mental disability than for other classes appearing in the state equal protection clause. We consider the challenge as raised to be directed to § 46a-58, which is not before this court.[23] Certainly, if § 46a-58 included ancestry and mental disability, there could be no claim by CHRO that suspect classes of persons were being treated in a disparate fashion.

CHRO's argument also presupposes the application of § 46a-58 to employment cases. If § 46a-58 does not apply to employment cases, then we are not even presented with "persons similarly circumstanced." *F. S. Royster Guano Co.* v. *Virginia*, 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989 (1920). Nevertheless, CHRO has not bothered to brief this underlying premise. Where an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. *Hayes* v. *Smith*, 194 Conn. 52, 66 n.12, 480 A.2d 425 (1984). In this case, CHRO's argu-

---

[22] In *Daly* v. *DelPonte*, 225 Conn. 499, 515, 624 A.2d 876 (1993), we held that "amendment twenty-one's protection for those possessing physical and mental disabilities identifies the members of this class as a group especially subject to discrimination and requires the application of the highest standard of review to vindicate their constitutional rights. . . . [T]hat standard requires strict scrutiny of the challenged government action."

[23] To test the application of § 46a-58 to an instance of discrimination because of a mental disorder, after having become aware of Frederick's situation, CHRO could have issued its own complaint pursuant to General Statutes § 46a-82 (b), which provides: "The commission, whenever it has reason to believe that any person has been engaged or is engaged in a discriminatory practice, may issue a complaint except for a violation of subsection (a) of section 46a-80." If there existed no compelling state reason for the legislature to have excluded ancestry and mental disorder from the designated classes of individuals within § 46a-58, that otherwise parallels the constitution; *Barannikova* v. *Greenwich*, 229 Conn. 664, 690, 643 A.2d 251 (1994); we would then be faced squarely with the choice of striking the statute or giving it the necessary expansive reading to cure the constitutional infirmity. Because none of that has transpired in this case, we will refrain from offering any advisory opinion.

ment derives from a premise the validity of which has not been tested. Without the benefit of adequate briefing, we will not decide whether § 46a-58 has the sweep that CHRO ascribes to it. Thus, we leave for another day the question of whether a violation of employment laws is also a violation of § 46a-58, thereby creating liability for compensatory damages, other than back pay as expressly authorized by § 46a-86 (b), and attorney's fees by virtue of its inclusion within § 46a-86 (c), or whether the omission of § 46a-60 from § 46a-86 (c) reflects the legislature's intent that § 46a-58 not pertain to employment claims. Under these circumstances, we see no reason, and therefore reject CHRO's invitation, to expand § 46a-86 (a) to include compensatory damages and attorney's fees because of a perceived, but unclaimed, defect in § 46a-58.

CHRO also suggests that we apply to this case the due process analysis we utilized in *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey*, 229 Conn. 312, 640 A.2d 101 (1994). CHRO argues that because the legislature authorized compensatory damages and attorney's fees pursuant to § 46a-86 (c) for victims of discrimination involving housing, public accommodation, cross-burning, and desecration of public property, private property or house of religious worship, these same remedies must also be made available to victims of § 46a-60 in order to satisfy substantive due process concerns. Because of the lack of specificity in CHRO's brief, however, we are unable to discern whether we are being asked to apply an analytical framework under the state or federal constitution.[24] Regardless, CHRO's reliance is misplaced.

---

[24] The entire reference to the due process clause is in CHRO's brief as the appellee: "Indeed, the twin sums(sic) of the equal protection and due process clauses of the state and federal constitutions doom the darkness of such classification."

*Fair Cadillac-Oldsmobile Isuzu Partnership* involved the legislature's exercise of its police powers, a fundamentally different situation than the one presently before the court. In that case, we examined legislation that policed the operation of a legitimate business. " 'The court's function in examining the constitutional aspect of police legislation is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way.' " Id., 318–19. Although this case involves statutes that afford protection to someone who has been the victim of discriminatory conduct, CHRO has not demonstrated, because it has not briefed, that Frederick is otherwise entitled to certain kinds of damages or attorney's fees. See *Hayes* v. *Smith*, supra, 194 Conn. 66 n.12. Therefore, CHRO has failed to show that our interpretation of § 46a-86 (a) renders it an act of legislative infringement.

On the plaintiff's appeal, the judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the plaintiff's appeal; on CHRO's appeal, the judgment is affirmed.

In this opinion the other justices concurred.