[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
INTRODUCTION
The Plaintiff, Gail Fulk, brings this action against the Defendants, Richard W. Lee and Stephen A. Lamont, doing business as Lee Lamont Realty, pursuant to Connecticut's Fair Housing Act, General Statutes §§ 46a-64c and 46a-98a, alleging that she was denied an apartment because she is a recipient of housing assistance and other public assistance. Trial on this matter was held on February 1, 2002 at which time the court heard testimony from the Plaintiff and the Defendant, Stephen A. Lamont.
FINDINGS OF FACT
Based upon the evidence presented, the court finds the following facts. In 1996 the Plaintiff, who is Black, was living in Charter Oak Terrace in Hartford and wanted to leave that area because of the murders that had occurred there and she sought a better life in the suburbs. On April 22, 1996 she went to West View, a rental property owned by the Defendants at 100 West Street in Vernon, Connecticut. She was shown a two bedroom townhouse apartment by Liz Hildebrand. The Plaintiff had Section 8 benefits that would have paid the full amount of the rent for the apartment. She filled out the application for the apartment and a couple days later Hildebrand advised her that she couldn't rent to her because she was on welfare and had a Section 8 certificate. On April 24, 1996 Hildebrand sent the Plaintiff notice that her application had been rejected because of "no employment." Employment and employment history were some of the things Lamont looked at in reviewing a rental application. Although the Plaintiff had no employment, she had a good, although little, credit history and a good reference from her present landlord. Lamont looked at employment as a factor because Section 8 funding could be cancelled and he wanted to ensure that tenants would have the means of securing other funds for the rent or for expenses not covered by Section 8 such as damage to the apartment. Lamont didn't believe that welfare was sufficient other income to secure such expenses because he felt that welfare is to be directed to day to day living CT Page 1579 expenses.
The Plaintiff was surprised that she didn't get the apartment and was upset, hurt and felt she had been discriminated against, leaving her feeling depressed and anxious. Although the Plaintiff was under the care of a psychiatrist at that time and had been for a number of years previous, this matter caused her additional emotional upset. However, she did not incur any out-of-pocket expenses as a result of being denied the apartment. In August she was able to find an apartment in Colchester and moved there where she lived for the next four years.
DISCUSSION
General Statutes § 46a-64c provides, in parts pertinent to this case, that: "(a) It shall be a discriminatory practice in violation of this section: (1) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, creed, color, national origin, ancestry, sex, marital status, age, lawful source of income or familial status . . . (b) . . . (5) The provisions of this section with respect to the prohibition of discrimination on the basis of lawful source of income shall not prohibit the denial of full and equal accommodations solely on the basis of insufficient income."
The Supreme Court discussed the meaning of this language in Commissionon Human Rights Opportunities v. Sullivan Associates, 250 Conn. 763
(1999). There, one of the issues presented was whether a landlord may avoid renting to an otherwise qualified Section 8 tenant by insisting on tenant income requirements beyond those contemplated by state statute. The complainants had claimed that Sullivan Associates had violated §46a-64c by refusing to rent to them because they expected to pay for their housing using their lawful source of income, that is, housing assistance from the state section 8 program. The defendant had claimed that their refusal to rent was based on their standard income requirements. The Court faced the apparent "facial inconsistency between making it mandatory for landlords to accept low income section 8 tenants and making it permissible for landlords to reject tenants with an `insufficient income'." The Court went on to note that: "The purpose of the relevant provisions of § 46a-64c is to prevent low income families from being `rejected or denied a full and equal opportunity for . . . public accommodation based solely on the presence of a particular source of income. 32 H.R. Proc., supra, p. 8776, remarks of Representative Taborsak. It would be inconsistent with the remedial mandate of § 46a-64c for the legislature to have afforded to landlords carte blanche authority to define the term "insufficient CT Page 1580 income' so as to qualify for the exception in § 46a-64c (b)(5). Such a construction would swallow the statute whole and render it meaningless. We have long held to the rule that statutory exceptions are to be strictly construed. Conservation Commission v. Price, 193 Conn. 414,424, 479 A.2d 187 (1984)." Id., 250 Conn. at 786-787. The Court concluded that the statutory exception must be narrowly construed to afford "a landlord an opportunity to determine whether, presumably for reasons extrinsic to the section 8 housing assistance calculation, a potential tenant lacks sufficient income to give the landlord reasonable assurance that the tenant's portion of the stipulated rental will be paid promptly and that the tenant will undertake to meet the other obligations implied in the tenancy." Id., 250 Conn. at 789. The Court held that the burden of proving eligibility for the exception must be borne by the defendant. "To determine whether the defendant has met its burden, a finder of fact on this issue may consider criteria that include, but are not limited to, the potential tenant's income, personal rental obligation, foreseeable utility expenses and foreseeable liability for other than ordinary wear and tear." Id., 250 Conn. at 792.
Here the Defendants admit that the Plaintiff was refused the rental because she had no employment. However, she had Section 8 benefits sufficient to cover the rent as well as welfare assistance. The purpose of Section 8, as the Supreme Court noted, is to aid low-income families in obtaining decent housing, thus it is likely that recipients have no or little income from employment. Yet the statute provides that the defendants could not refuse to rent to the plaintiff because of her source of income. By rejecting her on the basis that she had no employment, the defendants accomplished indirectly what they could not do directly. To reject the Plaintiff on this basis alone violates the prohibition of the statute that prohibits a refusal to rent based on "lawful source of income."
The Defendants have also failed to meet their burden to show that the Plaintiff had "insufficient income" within the meaning of the statute. The Defendants' claim that their decision to deny the Plaintiff's application is based on legitimate business reasons must fail in light of the holding in Sullivan Associates. The Defendants admit that they did not consider the Plaintiff's income from welfare and her ability to meet the expenses of her tenancy, but instead based their decision that she would be unable to meet those obligations on the absence of any employment or evidence of previous employment. This rationale does not meet the burden placed upon them to prove that she had "insufficient income" within the meaning of the statute.
Once a violation of the statute has been found the court has a number of remedies. Contrary to the claims of the Defendants, those remedies do CT Page 1581 not require proof by the Plaintiff of actual damages. In any event, it was clear to the court that the Plaintiff had suffered emotional distress as a result of the Defendants' conduct.
Pursuant to General Statutes § 46a-98a, the court has the power to "grant relief, by injunction or otherwise, as it deems just and equitable." In addition the court may grant any relief which a hearing officer may grant under General Statutes § 46a-86 or which the court could grant under General Statutes § 46a-89. Pursuant to General Statutes § 46a-86 the court may order the defendants "to cease and desist from the discriminatory practice and further requir[e] the [defendants] to take such affirmative action as in the judgment of the [court] will effectuate the purpose of this chapter" and may "determine the damage suffered by the complainant, which damage shall include, but not be limited to, the expense incurred by the complainant for obtaining alternate housing or space, storage of goods and effects, moving costs and other costs actually incurred by him as a result of such discriminatory practice and shall allow reasonable attorney's fees and costs." Damages that may be awarded under this section include damages for emotional distress. Bridgeport Hospital v. Commission on Human Rights Opportunities, 232 Conn. 91 (1995) (emotional distress damages not available in employment discrimination case pursuant to subsection (b) of General Statutes § 46a-86 but available in housing discrimination cases pursuant to subsection (c) of that statute). Pursuant to General Statutes § 46a-89 the court may order "an award of punitive damages payable to the complainant, not to exceed fifty thousand dollars, or . . . a civil penalty payable to the state against the respondent to vindicate the public interest . . . [i]n an amount not exceeding ten thousand dollars if the respondent has not been adjudged to have committed any prior discriminatory housing practice."
ORDERS
From the evidence presented, it took the Plaintiff another three months to find other housing. In addition, she suffered, and continues to suffer, almost six years later, emotional distress associated with the Defendants' conduct. Therefore judgment for the Plaintiff shall enter and the Defendants are ordered to pay the Plaintiff $1,500 for emotional distress damages and to provide the Plaintiff with notice of any apartments at West View, 100 West Street, Vernon, Connecticut, that become available for rent during the next six months.
Jane S. Scholl, J.