FAIR CADILLAC-OLDSMOBILE ISUZU PARTNERSHIP ET AL. *v.* JOHN M. BAILEY ET AL.
(14806)

PETERS, C. J., BORDEN, BERDON, KATZ and SANTANIELLO, Js.

Argued December 8, 1993—decision released March 24, 1994*

* March 24, 1994, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Stanley A. Twardy, Jr.,* with whom were *Jonathan B. Tropp* and, on the brief, *Allan B. Taylor,* for the plaintiffs.

*Peter R. Huntsman,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the defendant commissioner of motor vehicles.

*Wesley W. Horton,* with whom were *Susan M. Cormier* and, on the brief, *Michael S. Taylor,* law student intern, for the defendant Connecticut Automotive Trades Association, Inc., et al.

BERDON, J. The sole issue in this case is whether General Statutes § 53-301,[1] which prohibits a party engaged in the business of selling motor vehicles from selling them on Sunday, violates the state constitution. Because we conclude that § 53-301 violates substantive due process under article first, § 8, of the state constitution[2] we need not reach the plaintiffs' other state constitutional claims.[3]

---

[1] General Statutes § 53-301 provides: "No person, firm or corporation engaged in the business of buying, selling, exchanging, dealing or trading in new or used motor vehicles shall open any place of business or lot wherein he attempts to or does engage in the business of buying, selling, exchanging, dealing or trading in new or used motor vehicles, or buy, sell, exchange, deal or trade in new or used motor vehicles as a business on Sunday. Any person who violates the provisions of this section shall be fined not more than fifty dollars for the first offense and not more than one hundred dollars for each subsequent offense. Any licensed motor vehicle dealer who violates the provisions of this section shall, in addition to the fine provided herein, be subject to suspension of license as provided in section 14-64."

[2] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

[3] The plaintiffs also claim that General Statutes § 53-301 is discriminatory and violates the equal protection clauses of article first, §§ 1 and 20, as amended, of the Connecticut Constitution and that § 53-301 is void for vagueness and therefore violates due process under article first, § 8, of the Connecticut constitution.

The plaintiffs are nine motor vehicle dealerships located in Danbury.[4] They instituted this suit in order to obtain a declaratory judgment[5] that § 53-301 is unconstitutional, and to enjoin the defendant commissioner of motor vehicles from enforcing the statute.[6] Subsequent to the filing of the suit, the trial court granted the Connecticut Automotive Trades Association, Inc. (CATA), and Tufano Motorcar, Inc., permission to join the suit as defendants. Thereafter, the plaintiffs filed an amended complaint that sought only a declaratory judgment. The parties filed a joint stipulation of facts and petitioned the trial court to reserve three questions concerning the constitutionality of § 53-301[7] for the

---

[4] In addition to Fair Cadillac-Oldsmobile Isuzu Partnership, the following are plaintiffs: Fair Hyundai Partnership, Fair Motors Partnership, Fair Chevrolet-Geo Partnership, Fair Infiniti Partnership, Fair Imports Partnership, Danbury-Mt. Kisco Saturn Partnership, Danbury Auto Partnership and Fair Chrysler-Plymouth Partnership.

[5] Pursuant to Practice Book § 388 et seq., which govern actions for declaratory judgments, the plaintiffs were required to provide public notice of the declaratory judgment they sought. The trial court found that "all persons having an interest in the subject matter of this action are now parties to the action or have had reasonable notice thereof," and therefore that the plaintiffs had complied with Practice Book § 390 (d). The defendants do not challenge this finding, which is critical to establishing the trial court's subject matter jurisdiction. *Serrani* v. *Board of Ethics,* 225 Conn. 305, 308, 622 A.2d 1009 (1993); see also *Salamandra* v. *Kozlowski,* 173 Conn. 136, 138, 376 A.2d 1103 (1977) (failure to provide the requisite notice in a declaratory judgment action deprives the trial court of subject matter jurisdiction).

[6] In the original complaint, John M. Bailey, chief state's attorney, and Walter D. Flanagan, state's attorney for the Danbury judicial district, were also named as defendants. The plaintiffs subsequently withdrew their complaint as to these two defendants.

[7] The trial court reserved the following three questions: "(1) Does General Statutes § 53-301 violate [the] plaintiffs' rights to equal protection of the laws guaranteed by article first, §§ 1 and 20, of the Connecticut constitution?

"(2) Does § 53-301 violate [the] plaintiffs' rights to due process of law guaranteed by article first, § 8, of the Connecticut constitution?

"(3) Is § 53-301 unconstitutionally vague in violation of article first, § 8, of the Connecticut constitution?"

advice of this court.[8] The trial court granted the petition for reservation and approved the joint stipulation of facts.

The following stipulated facts are relevant. For most of the year, the plaintiff dealerships are open for business Monday through Thursday from 8:30 a.m. to 9 p.m., and Friday and Saturday from 8:30 a.m. to 6 p.m.[9] Currently, Saturday is the busiest and most profitable day for the plaintiffs. The plaintiffs would open for business on Sunday if they were permitted to do so. Section 53-301 has caused the plaintiffs to suffer economic loss in the form of lost potential profits from Sunday sales of new and used automobiles and trucks.[10]

Section 53-301 is one of the last vestiges of Connecticut's Sunday closing laws, some of which were first

[8] Practice Book § 4147 provides in relevant part: "A reservation shall be taken to the supreme court or to the appellate court from those cases in which an appeal could have been taken directly to the supreme court, or to the appellate court, respectively, had judgment been rendered. . . .

"All questions presented for advice shall be specific and shall be phrased so as to require a Yes or No answer.

"The court will not entertain a reservation for its advice upon questions of law arising in any action unless the question or questions presented are such as are, in the opinion of the court, reasonably certain to enter into the decision of the case, and it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action. . . ."

Practice Book § 4148 provides: "Before any question shall be reserved by any court, counsel shall file in that court a stipulation which shall clearly and fully state the question or questions upon which advice is desired; that their present determination by the supreme or the appellate court would be in the interest of simplicity, directness and economy in judicial action, the grounds for such allegation being particularly stated; that the answers to the questions will determine, or are reasonably certain to enter into the final determination of the case; and that the parties request that the questions be reserved for the advice of the supreme or the appellate court."

[9] During the summer months, the plaintiff dealerships stay open until 9 p.m. on Friday.

[10] The parties stipulated that automobile dealerships in New York may open on Sunday, and that there are customers who purchase cars on Sunday from New York dealers who would otherwise purchase cars from Connecticut dealers, including the plaintiffs.

codified in 1650. *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 306, 417 A.2d 343 (1979) (*Caldor's*). In *Caldor's,* we struck down the general Sunday closing law, General Statutes § 53-302a, as violative of substantive due process under our state constitution. The closing law at issue in this case, § 53-301, was originally adopted as § 1 of No. 614 of the 1957 Public Acts. Section 2 of this act contained the predecessor of § 53-302a. The plaintiffs claim that the substantive due process analysis developed in *Caldor's* for challenging Sunday closing laws under our state constitution requires us to strike down § 53-301. We agree.

We recognize that a party challenging the constitutionality of a statute must prove its unconstitutionality beyond a reasonable doubt. *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 590, 590 A.2d 447 (1991); *Bartholomew* v. *Schweizer,* 217 Conn. 671, 675, 587 A.2d 1014 (1991); *Zapata* v. *Burns,* 207 Conn. 496, 508, 542 A.2d 700 (1988). While the courts may declare a statute to be unconstitutional, our power to do this should "be exercised with caution, and in no doubtful case." *State* v. *Brennan's Liquors,* 25 Conn. 278, 289 (1856). Every presumption is to be given in favor of the constitutionality of the statute. *State* v. *Floyd,* 217 Conn. 73, 79, 584 A.2d 1157 (1991); *Bottone* v. *Westport,* 209 Conn. 652, 657, 553 A.2d 576 (1989).

The plaintiffs rely solely on state constitutional grounds to invalidate § 53-301. It is beyond dispute that we are not bound by federal precedents in interpreting our own state constitutional provisions. "[F]ederal decisional law is not a lid on the protections guaranteed under our state constitution." *Doe* v. *Maher,* 40 Conn. Sup. 394, 419, 515 A.2d 134 (1986). As we stated in *State* v. *Geisler,* 222 Conn. 672, 684, 610 A.2d 1225 (1992), "federal constitutional and statutory law establishes a minimum national standard for the exercise of

individual rights and does not inhibit state governments from affording higher levels of protection . . . ." (Internal quotation marks omitted.)

Nevertheless, we are not precluded from using federal precedents in crafting a framework for state constitutional analysis and in interpreting state constitutional provisions. "Just as it is wrong to assume that state constitutions are mere mirror images of the Federal Constitution, so it is wrong to assume that independent state constitutions share no principles with their federal counterpart. The interstices of open-ended state constitutions remain to be filled, and many of them will best be filled by adopting into state law, on a case-by-case basis, persuasive constitutional doctrines from federal law and from sister states." E. Peters, "State Constitutional Law: Federalism in the Common Law Tradition," 84 Mich. L. Rev. 583, 592–93 (1986); see also *Daly* v. *DelPonte,* 225 Conn. 499, 512–13, 624 A.2d 876 (1993) ("[i]n the interpretation of our state constitution, we have often consulted the case law under the federal constitution . . ."); *State* v. *Lamme,* 216 Conn. 172, 184, 579 A.2d 484 (1990) ("[t]he adoption of federal constitutional precedents that appropriately illuminate open textured provisions in our own organic document in no way compromises our obligation independently to construe the provisions of our state constitution"). Furthermore, it is clear that our adoption, for purposes of state constitutional analysis, of an analytical framework used under the federal constitution does not preclude us from concluding that a statute that would be valid under the federal constitution is nevertheless invalid under our state constitution. See, e.g., *State* v. *Miller,* 227 Conn. 363, 377–87, 630 A.2d 1315 (1993).

The due process clause of article first, § 8, like the similar provision in the federal fourteenth amendment, provides for varying levels of judicial review to deter-

mine whether a state statute or regulation passes constitutional muster in terms of substantive due process. See *Daly* v. *DelPonte,* supra, 225 Conn. 513 ("We have held, in accordance with the federal frame of analysis, that state action concerning social and economic regulation will survive an equal protection challenge if it satisfies a rational basis test. . . . If, however, state action invidiously discriminates against a suspect class or affects a fundamental right, the action passes constitutional muster under the state constitution only if it survives strict scrutiny." [citation omitted]); *Doe* v. *Maher,* supra, 40 Conn. Sup. 441–43 (recognizing that varying levels of judicial review are used depending on the nature of the right the statute or regulation impinges upon).

We agree with the defendants that § 53-301 neither impairs a fundamental constitutional right nor targets a suspect class, either of which would require that this court apply strict scrutiny to determine whether the statute passes muster under our state constitution. *State Management Assn. of Connecticut, Inc.* v. *O'Neill,* 204 Conn. 746, 750, 529 A.2d 1276 (1987). Rather, because § 53-301 merely regulates a commercial activity—the sale of motor vehicles on Sunday—it must be reviewed "in accordance with the rules that normally govern constitutional challenges of economic or social welfare legislation, by ascertaining whether the legislature has acted arbitrarily or irrationally." *Connecticut Education Assn., Inc.* v. *Tirozzi,* 210 Conn. 286, 299, 554 A.2d 1065 (1989). Although great constitutional deference is afforded to the legislature, our state due process clause mandates that the legislature must limit the exercise of its police powers to preserving the public peace, health and morals. *In re Application of Clark,* 65 Conn. 17, 40, 31 A. 522 (1894). "The court's function in examining the constitutional aspect of police legislation is to decide whether the purpose of the legis-

lation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way." *Pierce* v. *Albanese,* 144 Conn. 241, 249, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957). Even under this less exacting test of constitutionality, an economic regulation will survive a substantive due process test only if it is both rational and related to a legitimate state purpose. *Campbell* v. *Board of Education,* 193 Conn. 93, 105, 475 A.2d 289 (1984); *Caldor's,* supra, 177 Conn. 315. "If an enactment meets this test, it satisfies the constitutional requirements of due process . . . . *Schwartz* v. *Kelly,* 140 Conn. 176, 179, 99 A.2d 89 [1953]; *Carroll* v. *Schwartz,* 127 Conn. 126, 129, 14 A.2d 754 [1940]." *Pierce* v. *Albanese,* supra, 249.

As the first step in our state constitutional analysis, we must ascertain the legislative purpose behind § 53-301 in order to evaluate whether the statute is rationally related to that purpose. As noted above, § 53-301 is one of the Sunday closing laws and was originally adopted in the same legislation; Public Acts 1957, No. 614; as the general closing law struck down in *Caldor's.* In *Caldor's,* supra, 177 Conn. 310, we determined that the purpose of these closing laws was to create a common day of rest. "Although in origin such laws were intimately related to the establishment of religious principles, over time their acknowledged purpose and justification have shifted to secular grounds." Id., 306. In an attempt to avoid the state constitutional principles developed in *Caldor's* for analyzing closing law legislation, the defendants claim that we should speculate concerning other conceivable purposes for the statute.[11] We disagree.

---

[11] Notwithstanding our determination that the purpose of General Statutes § 53-301 is to provide a common day of rest, we review in this foot-

As early as the turn of the century, when religious observance was still an acknowledged purpose for the

note and in footnotes 12 and 13, the alternative purposes proposed by the defendants.

The first "purpose" advanced is that "motor vehicle dealers are comprehensively regulated under title 14 [of the General Statutes] by the Motor Vehicle Commissioner (who does no work on Sunday)." The defendants concede that motor vehicle dealerships are permitted to be open on Saturday, Monday and during the evenings, even though the department of motor vehicles (DMV) is closed at these times. Therefore, the fact that the DMV is closed on Sunday does not furnish a rational purpose for the closing law. This is especially true in light of the parties' stipulation that Saturday is the busiest day of the week for motor vehicle dealers, and is also a day when the DMV is open only in the morning. Furthermore, this "purpose" is more like an observation, and the defendants do not explain how the closing law advances the purpose of comprehensively regulating dealers.

The second purpose is that "motor vehicles are unlike most other consumer products because of their cost." The defendants claim that allowing dealerships to open seven days a week could lead to higher overhead without significantly higher sales and therefore to lower dealer profits, higher consumer prices, or both, and that the legislature may have wanted to avoid this. The defendants have stipulated, however, that if dealers could open on Sunday, it would be their second busiest and most profitable day after Saturday. If the legislature were truly seeking to hold down dealer overhead through the mechanism of a closing law, it would force dealers to close on a weekday when sales are slower, rather than on Sunday.

Third, the defendants claim that allowing dealers to open on Sunday as well as Saturday "would create an intolerable burden on DMV employees, as they attempted to process all of the new and transferred registrations in a timely manner on Tuesdays . . . ." The defendants have not placed any facts on the record concerning the burden on DMV employees and how Sunday vehicle sales would affect them. Furthermore, the defendants have stipulated that: (1) the DMV has an automated registration system that permits motor vehicles to be registered when the DMV is closed; and (2) in the "vast majority of instances," dealers do not deliver vehicles to customers on the day they are sold. These two facts, which are on the record, wholly undermine the defendants' unsupported claim that allowing dealers to open on Sunday would create an "intolerable burden" for the DMV.

Finally, the defendants claim that prohibiting dealers from opening on Sundays makes it easier for DMV personnel to make unannounced site inspections, because they have only six days to cover instead of seven. This claim makes no sense, however, unless DMV personnel must inspect every dealership every day. To the contrary, having seven days available on which to make inspections instead of six would provide DMV personnel with greater flexibility in scheduling inspections and allow a greater number of inspections to be accomplished each week.

closing laws, this court made clear that such laws were also designed to secure to private citizens the quiet enjoyment of Sunday as a day of rest. *Wetherell* v. *Hollister,* 73 Conn. 622, 625, 48 A. 826 (1901). We have reiterated this secular purpose in more modern times. See *Caldor's,* supra, 177 Conn. 306; *State* v. *Shuster,* 145 Conn. 554, 557–58, 145 A.2d 196 (1958); *State* v. *Hurliman,* 143 Conn. 502, 507, 123 A.2d 767 (1956). In view of these judicial pronouncements, we presume that the legislature has "knowledge of this long-standing construction which this court has given to the objective and purpose of legislation in this field." *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886 (1968); see also *Cappellino* v. *Cheshire,* 226 Conn. 569, 576, 628 A.2d 595 (1993) (" 'the legislature is presumed to be aware of the judicial construction placed upon its enactments' "). We also presume that the legislature is aware of the effect that its action or inaction will have on an existing statute, and to intend the effect that its action or inaction produces. *All Brand Importers, Inc.* v. *Dept. of Liquor Control,* 213 Conn. 184, 197, 567 A.2d 1156 (1989).

The legislature has not done anything to indicate that § 53-301 has a separate purpose from the other Sunday closing laws, or that the purpose of these laws is not a common day of rest. We must therefore reaffirm the long-standing construction that this court has given to the purpose of the closing laws—that is, "to further a common day of rest." *Caldor's,* supra, 177 Conn. 325. Because an act with such a purpose "cannot be justified by other unspecified governmental, economic, or social reasons"; id.; we will not speculate as to other conceivable purposes.

The courts have recognized that providing a common day of rest for citizens is a legitimate governmental interest. *McGowan* v. *Maryland,* 366 U.S. 420, 445, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961); *Caldor's,* supra,

177 Conn. 306. That does not, however, end our constitutional inquiry, because we must determine whether the prohibition of the sale of motor vehicles on Sunday bears a reasonable relationship to that purpose. In *Caldor's,* we recognized the difficulty in making this inquiry. "Because any statement of the rational connection test is necessarily general and open-ended, controversy tends, as in this case, to concern not the test itself but rather its application." *Caldor's,* supra, 315. Accordingly, in performing our substantive due process analysis under the state constitution, we borrow from the teachings of procedural due process in examining the "totality of circumstances that bear on the rationality" of the statute. Id., 316.

In this case, as in *Caldor's,* there are three aspects of the Sunday closing law at issue that warrant special emphasis in examining the totality of circumstances. First, as the parties concede, § 53-301 is a penal statute. Motor vehicle dealers who violate the statute are subject both to fines and to possible suspension of their dealer's licenses. As a penal statute, § 53-301 must be strictly construed. Id., 318.

Second, § 53-301 regulates conduct that would be entirely legitimate in the absence of the statute. We noted in *Caldor's,* supra, 177 Conn. 317, that "[t]o be constitutionally valid, legislation policing the operation of a legitimate business must serve some phase of the public health, safety, convenience and welfare in a reasonable and impartial way." (Internal quotation marks omitted.) See also *Mott's Super Markets, Inc.* v. *Frassinelli,* 148 Conn. 481, 487, 172 A.2d 381 (1961) (invalidating, under the due process clause of the state constitution, a provision of the Unfair Sales Practices Act that provided that proof that a retailer had sold or offered to sell goods below cost would be prima facie evidence of an intent to destroy competition); *United Interchange, Inc.* v. *Spellacy,* 144 Conn. 647, 654, 136

A.2d 801 (1957) (invalidating, under the due process and equal protection provisions of the state constitution, a statute requiring individuals who solicit advertisements for real estate periodicals to obtain real estate licenses). While "the legislature has a broad discretion" in fashioning economic legislation, the courts must limit this discretion "at that point where the regulatory measures either fail to serve the public good or serve it in a despotic way." (Internal quotation marks omitted.) *Caldor's,* supra, 317; see also *Mott's Super Markets, Inc.* v. *Frassinelli,* supra, 487; *United Interchange, Inc.* v. *Spellacy,* supra, 654. "[R]egulations imposed on a lawful business cannot exceed what is reasonably necessary to accomplish their purpose," especially where the regulation imposes penal sanctions for conduct that does not carry "any antisocial implications whatsoever." *Caldor's,* supra, 318; see also *Mott's Super Markets, Inc.* v. *Frassinelli,* supra, 487.

Third, as we recognized in *Caldor's,* supra, 177 Conn. 319, difficulties inhere in legislation designed to provide a common day of rest. As a Sunday closing law, § 53-301 "furthers an objective that is difficult to effectuate with clarity and precision." Id., 316. In *Caldor's,* the fact that the legislature had provided numerous exemptions from the general closing law led us to conclude that the statute failed to effectuate, in a rational manner, the objective of providing a common day of rest. Id., 324–25. The difficulty in discerning a rational connection between the statute and its objective is even more pronounced in this case, because the legislature has failed to reenact a general Sunday closing law. As a result, almost all commercial enterprises other than motor vehicle dealerships are permitted to open for business on Sunday. Indeed, it appears that, since *Caldor's,* the legislature has completely abandoned the difficult task of providing a common day of rest for the people of Connecticut.

In view of the totality of circumstances set forth above, we conclude that the plaintiffs have proven beyond a reasonable doubt that § 53-301 is arbitrary and therefore violates article first, § 8, of our state constitution. The current statutory scheme fails to provide a common day of rest for Connecticut's people, and we cannot discern any legitimate reason for providing a common day of rest for one narrow class of employees,[12] or, in regard to consumers, from one specific type of purchase.[13] Furthermore, § 53-301 may actually harm the public by making it inconvenient and difficult for people to comparison shop for motor vehicles at different dealerships. For example, the defendants concede that many couples prefer to shop together for a car, but only have time to do so on Sundays and in the evenings. Because § 53-301 prevents them from

---

[12] The defendant commissioner of motor vehicles claims that "[General Statutes] § 53-301 may have been designed to further a day of rest specifically for the operators and employees in the highly regulated, highly competitive business of motor vehicle sales." This objective is accomplished, however, by General Statutes § 53-303e (a), which provides that no employer may "compel any employee engaged in any commercial occupation . . . to work more than six days in any calendar week . . . ." The defendants do not offer any persuasive reason why the legislature would conclude that a *common* day of rest is needed for employees of motor vehicle dealerships, beyond the mere fact that a majority of full-time dealership employees would prefer not to work on Sunday. Presumably, there are many people in the state of Connecticut who would prefer not to work on Sunday. The defendants have failed, however, to offer a rational reason why the legislature would single out this one group of employees for special protection.

[13] The defendants Connecticut Automotive Trades Association, Inc., and Tufano Motorcar, Inc., claim that the legislature "might rationally find that there should be a day of rest for such a major transaction" because "some transactions associated with purchasing a motor vehicle, such as arranging insurance and financing, generally cannot be accomplished on Sundays." This claim makes no sense, however, in light of the defendants' concession that even though insurance and many financing companies are closed on Saturdays and in the evening, motor vehicle dealerships may and do open for business at these times. Furthermore, the defendants concede that other major consumer goods—such as boats, homes and jewelry—are bought and sold on Sundays. In many cases, the purchase of these goods, too, involves financing and insurance arrangements.

shopping on Sundays, they are limited to evenings and probably to the dealerships closest to their homes or places of business. Such anticompetitive effects harm all consumers.

The second reserved question—that is, does § 53-301 violate the plaintiffs' rights to due process of law guaranteed by article first, § 8, of the Connecticut constitution?—is answered in the affirmative. The case is remanded to the trial court for further proceedings consistent with this opinion.

No costs will be taxed in this court to any party.

In this opinion the other justices concurred.