AFSCME, COUNCIL 4, LOCAL 681, AFL-CIO *v.*
CITY OF WEST HAVEN ET AL.
(15026)

CALLAHAN, BORDEN, BERDON, NORCOTT and PALMER, Js.

Argued June 1—decision released July 11, 1995

*Harry B. Elliott, Jr.*, with whom was *J. William Gagne, Jr.*, for the appellant (plaintiff).

*Saranne P. Murray*, with whom were *Sheila A. Huddleston, William J. Prensky*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellees (defendants).

PER CURIAM. The plaintiff, AFSCME, Council 4, Local 681, AFL-CIO, which represents the municipal employees of West Haven, applied to the Superior Court pursuant to General Statutes § 52-418[1] to vacate

_____

[1] General Statutes § 52-418 provides: "VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of

a binding collective bargaining arbitration award issued by the defendant West Haven finance planning and assistance board (board). The court affirmed the board's award and the plaintiff appealed from the court's judgment to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The events that prompted this litigation can be summarized in the following manner. In early 1992, the new administration of the defendant city of West Haven (city) became aware that the city's financial condition was especially precarious. Projections were that by the end of June, 1992, the city's deficit would reach $10.2 million. The administration attempted to alleviate the city's financial crisis by various methods, including borrowing money through the issuance of bond anticipation notes. In April, 1992, however, the city was informed that its bond rating had been downgraded so that its bond anticipation notes were unmarketable. In desperation, the city sought assistance from the state in the form of state guarantees of its present and future bond obligations.

The Connecticut legislature responded by enacting No. 92-5 of the 1992 Special Acts (act). The act provided the sought after guarantees of the city's obligations. It also created the board, however, to oversee the city's finances and to ensure that the city did not default on its bonds and bond anticipation notes that

any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators.

"(c) Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the State Board of Mediation and Arbitration shall notify said board and the attorney general, in writing, of such filing within five days of the date of filing."

were thereafter guaranteed by the state. Moreover, the board was vested by the act with broad oversight powers. Those powers include the power: to approve or disapprove budgets; to review and approve the city's financial plans; to review and approve all contracts involving expenditures of more than $50,000; and, most importantly for the purposes of this litigation, to approve or disapprove all collective bargaining agreements and to serve as the binding arbitration panel with respect to all labor contracts.

On June 30, 1993, the existing collective bargaining agreement between the plaintiff and the city expired. When the plaintiff and the city were unsuccessful in agreeing on a new contract, the board imposed binding arbitration. Functioning as the arbitration panel pursuant to the act, the board conducted hearings and issued an arbitration award in December, 1993. The plaintiff, dissatisfied with the arbitration award, filed its application to vacate the award. In its application to vacate, the plaintiff claimed that the act: (1) violated the home rule provision of article tenth, § 1, of the state constitution;[2] (2) violated General Statutes § 2-14;[3]

---

[2] The constitution of Connecticut, article tenth, § 1, provides: "The general assembly shall by general law delegate such legislative authority as from time to time it deems appropriate to towns, cities and boroughs relative to the powers, organization, and form of government of such political subdivisions. The general assembly shall from time to time by general law determine the maximum terms of office of the various town, city and borough elective offices. After July 1, 1969, the general assembly shall enact no special legislation relative to the powers, organization, terms of elective offices or form of government of any single town, city or borough, except as to (a) borrowing power, (b) validating acts, and (c) formation, consolidation or dissolution of any town, city or borough, unless in the delegation of legislative authority by general law the general assembly shall have failed to prescribe the powers necessary to effect the purpose of such special legislation."

[3] General Statutes § 2-14 provides: "INITIATION OF LOCAL LEGISLATION IN GENERAL ASSEMBLY. The general assembly shall enact no special legislation relative to the powers, organization and form of government of any town, city, borough or other unit of local government unless requested by a town, city, borough or other unit of local government, in the manner here-

(3) required the board members to act with "evident partiality" toward the city in violation of § 52-418 (a) (2);[4] (4) denied the plaintiff and its members equal protection of the law, in violation of article first, § 20, of the state constitution; and (5) granted the city exclusive emoluments or privileges in violation of article first, § 1, of the state constitution.[5] The trial court rejected the plaintiff's various claims and denied its application to vacate the arbitration award. This appeal followed. In its appeal, the plaintiff renews the claims it made in the trial court.

A thorough examination of the record, the briefs and arguments of the parties on appeal persuades us that the judgment of the trial court should be affirmed. The issues raised on appeal were correctly decided in the

inafter prescribed, to enact such special legislation. A resolution requesting the general assembly to enact special legislation and specifying the purpose of such legislation shall be adopted: (1) By a two-thirds vote of the council or board of directors in any town having such a body; of the board of aldermen, council or body charged with the duty of making annual appropriations in any city or consolidated town and city; of the board of burgesses in any borough or consolidated town and borough; or of the board of directors or district committee in any district; or (2) by the board of selectmen or by a majority vote of the town meeting or representative town meeting in any town not having a council or board of directors. A request for the enactment of special legislation by the general assembly may also be initiated by a petition specifying the purpose of such legislation and signed by not less than ten per cent of the electors of the town, city, borough or other unit of local government as determined by the last-completed registry list and filed with the clerk of such town, city, borough or other unit of local government. Upon the filing of such petition, such clerk shall proceed forthwith to determine its sufficiency by comparing the names thereon with those contained in such registry list and shall certify its sufficiency or insufficiency. Such clerk shall file with the secretary of the state, not later than ten days prior to the convening of any session of the general assembly in which such proposed legislation is to be introduced, a certified copy of the resolution as adopted or the text of the petition as signed."

[4] See footnote 1.

[5] The constitution of Connecticut, article first, § 1, provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

trial court's exhaustive memorandum of decision. *AFSCME, Council 4, Local 681, AFL-CIO* v. *West Haven*, 43 Conn. Sup. 470, 662 A.2d 160 (1995).[6] Because the court's memorandum of decision addresses and fully resolves the issues raised in the present appeal, it would serve no useful purpose to repeat the discussion contained therein. *Fraenza* v. *Keeney*, 232 Conn. 401, 404–405, 655 A.2d 1112 (1995).

The judgment is affirmed.

---

[6] In its memorandum of decision, the trial court states: "Connecticut affords the same meaning to the equal protection clause set forth in article first, § 20, of the state constitution as is given to the equal protection clause of the fourteenth amendment to the United States constitution. *Keogh* v. *Bridgeport*, 187 Conn. 53, 66, 444 A.2d 225 (1982)." *AFSCME, Council 4, Local 681, AFL-CIO* v. *West Haven*, supra, 43 Conn. Sup. 499. We have held, however, that "[i]n appropriate circumstances, we have interpreted the equal protection provisions of the state constitution differently than that contained in the federal constitution, particularly when the distinctive language of our constitution calls for an independent construction." *Daly* v. *DelPonte*, 225 Conn. 499, 513, 624 A.2d 876 (1993). Indeed, in *Daly* we construed the equal protection clause of the state constitution to furnish more protection than its federal counterpart. It does not affect the result in this case but our affirmance of the trial court's decision should not be construed so as to disavow our holding in *Daly*.