[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Presently before the court is the defendant's motion for summary judgment[1], and the plaintiffs' cross-motion for summary judgment[2]. This case arises out of the efforts by the plaintiffs to have this court enjoin the defendant from obtaining easement rights on the plaintiffs' property through a condemnation proceeding. There are numerous relevant facts in this case involving sensitive and highly charged issues. For purposes of the present motions[3], the parties have stipulated to the following facts.
I. STIPULATED FACTS
The plaintiffs[4] jointly own property (hereinafter, "the plaintiffs' property") in the town of Southington. The defendant, the city of Bristol (hereinafter "Bristol"), is a municipality within Hartford County. Bristol owns a landfill that is adjacent to the plaintiffs' property.
The Bristol landfill had been receiving waste materials for disposal since approximately 1950.[5] Contaminants from this waste material may have migrated onto the plaintiffs' property from the landfill. On October 24, 1995, the Connecticut Department of Environmental Protection (hereinafter "CDEP"), entered into a "Consent Order" with Bristol in which the defendant conceded that "the operation of a solid waste disposal area at the [landfill resulted] in a discharge of water, substance or materials, including but not limited to leachate, into the waters of the State."[6] (Parties' Stip. Ex. B.) The Consent Order required that Bristol: undertake certain investigations and studies with regard to the landfill; and propose plans in order to remediate the leachate contamination caused by the landfill. (Parties' Stip. Ex. B.) The Consent Order did not, however, require Bristol, now or in the future, to CT Page 3800 clean-up the contamination. (Parties' Stip. Ex. B.) The Consent Order did require Bristol to acquire control over all of the contaminated water rights or interests therein that were located within a certain "zone of influence."[7] Part of the "zone of influence" extends onto the plaintiffs' property in Southington.
The Connecticut General Assembly, in 1996, enacted Special Act 96-12 (hereinafter also referred to as "the Act"), which, by its terms, allowed a municipality to acquire by condemnation certain rights in property that is located outside the corporate limits of a municipality.
On April 14, 1997, after the passage of the Act, the Bristol city council passed a resolution authorizing the acquisition Bristol of certain easement rights on a portion of the plaintiffs property.[8] Thereafter, on July 30, 1997, Bristol commenced condemnation proceedings for easement rights on the plaintiffs' property.
On August 27, 1997, the plaintiffs filed this application for a temporary injunction against Bristol as a result of its attempt to take easement rights on the plaintiffs' property. Along with their application for a temporary injunction, the plaintiffs filed a verified complaint.
The verified complaint[9] seeks, inter alia, the following relief: (1) an injunction from Bristol's taking of the plaintiffs' property interests; (2) a declaration that Special Act 96-12 is void, and/or unconstitutional; (3) a declaration that the taking is invalid and/or unconstitutional; and (4) a declaration that the taking is against public policy.
On September 17, 1997, Bristol filed a "Certificate of Taking" with the court, and recorded the certificate in the Southington land records. Bristol then commenced an appraisal of the fair market value of the easement rights to be taken. Upon completion of the appraisal, Bristol deposited with the court the amount of the appraised value of the easement rights.
The parties are each seeking summary judgment on all of the claims of the verified complaint, supporting their respective motions with numerous exhibits, documents and a joint stipulation of facts.
II POSITIONS OF PARTIES
CT Page 3801
The plaintiffs argue that they are entitled to summary judgment as a matter of law for the following reasons. First, the plaintiffs argue that Special Act 96-12 was invalidly enacted, and consequently any act of condemnation that was authorized pursuant to the Act is void. Second, the plaintiffs contend that because Special Act 96-12 is "patently unreasonable and is not related to a legitimate state purpose," it is unconstitutional. (Pls' Mem. Supp. p. 19.) Third, the plaintiffs assert that the defendant's taking of their property rights was not done for a public use or purpose, and therefore the taking itself is unconstitutional. Fourth, in a similar argument, the plaintiffs claim that the taking violates statutorily expressed public policy with regard to the environment. Finally, fifth, the plaintiffs allege that Bristol's condemnation exceeds the scope of Special Act 96-12, and is violative of General Statutes §8-129.
Conversely, the defendant argues in support of its motion for summary judgment that: (1) Bristol's taking of the plaintiffs' easement rights was proper under Special Act 96-12; (2) Special Act 96-12 is valid; and (3) Special Act 96-12, and the taking, are constitutional because they are both for the public purpose of monitoring and remediating contamination from the landfill.
III. ISSUES TO BE DECIDED
The issues in dispute for this court to decide are: whether Special Act 96-12 was validly enacted; whether Special Act 96-12 is constitutional; whether the defendant's taking of property rights on the plaintiffs' property was constitutional; whether the defendant's taking of property rights on the plaintiffs' property violates public policy; and whether the defendant's actions in the condemnation proceeding exceeded the scope of authority given by Special Act 96-12.
For reasons more fully set forth below, this court holds that: Special Act was validly enacted; it is constitutional; the defendant's actions in connection with the taking of property rights were constitutional and in line with public policy; and the condemnation proceeding did not exceed that scope of Special Act 96-12.
IV. LEGAL DISCUSSION
CT Page 3802 A. Standard for Summary Judgment
"Practice Book § [17-49] provides that rendition of a summary judgment is appropriate if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Millerv. United Technologies Corp. , 233 Conn. 732, 755-52, 660 A.2d 810
(1995). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988). "In deciding motions for summary judgment, the trial court is obliged to construe the evidence in the light most favorable to the nonmoving party . . . The test to be applied is whether a party would be entitled to a directed verdict on the same facts." (Citation omitted; internal quotation marks omitted.) Gabrielle v. Hospital of St. Raphael,33 Conn. App. 378, 382-83, 635 A.2d 1232, cert. denied,228 Conn. 928, 640 A.2d 115 (1994)
B. Validity of Special Act 96-12
As a threshold matter, the parties' arguments raise the issue of whether Special Act 96-12 is invalid because the General Assembly enacted the Act despite Bristol's failure to comply with General Statutes § 2-14,[10] the initiation of local legislation statute. Because this issue is potentially dispositive of the remaining arguments raised in the parties briefs, the court will address it first.
The plaintiffs contend that Special Act 96-12 is invalid on its face, or in the alternative, as applied to them because the Act was not enacted in accordance with General Statutes § 2-14. Accordingly, the plaintiffs claim that the Act itself is void. Because Bristol's powers to condemn the plaintiffs' property interests derive from the Act, the plaintiffs conclude that the invalidity of the Act necessarily results in the invalidity of the condemnation.
Bristol does not dispute that it did not adhere to the requirements for the initiation of local, special legislation, as provided for in General Statutes § 2-14. Instead, the defendant argues that because Special Act 96-12 is not "special legislation," § 2-14 is inapplicable. Alternatively, the defendant claims that Connecticut common law forbids one CT Page 3803 legislature from dictating legislative procedure to a future legislature. Thus, the defendant maintains that despite the General Assembly's enactment of Special Act 96-12 without consideration or reference to General Statutes § 2-14, the Act is valid.
1. "Special Legislation"
At the outset, the court finds that the defendant's argument that Special Act 96-12 is not "special legislation," is without merit and against the evidence. Even under the definition of "special legislation." propounded by the defendant,[11] it is obvious from the record that Special Act 96-12 was enacted specifically for Bristol.[12]
Although the legislature does not define the term "special legislation" for purposes of General Statutes § 2-14, the Connecticut Supreme Court has stated that "special legislation" is legislation that is "relative to the powers of any single town." (Internal quotation marks omitted.) Carofano v.Bridgeport, 196 Conn. 623, 631, 495 A.2d 1011 (1985). Legislation is "special" if it affects "local municipal concerns," vis-a-vis, the powers and concerns of municipalities of the state in general. (Internal quotation marks omitted.) Windham TaxpayersAssn. v. Board of Selectmen, 234 Conn. 513, 534, 662 A.2d 1281
(1995). In determining whether legislation is "special," the pertinent consideration is whether the legislation's "purpose or its operation involves subjects of purely local concern. . . ."Carofano v. Bridgeport, supra, 196 Conn. 631. If so, then the legislation is "special." Id.
Special Act 96-12 applied only to municipalities that have landfills within their corporate limits, and which are subject to a Consent Order issued by the CDEP between August 1, 1995 and December 31, 1995, ordering them to close the landfill and acquire certain ground water rights within and without their boundaries. The Act provided that in the event that the municipality could not agree with the owners of water rights or interests on a fair price to be paid for those interests the municipality would be authorized, pursuant to the power of eminent domain, to condemn such ground water rights or interests therein.
The CDEP Consent Order required Bristol to acquire water rights in property that was located beyond its municipal limits. CT Page 3804 The Consent Order was issued on October 24, 1995, a date within the limited applicable time frame established by the legislature. Bristol was unable to purchase the necessary water rights and interests beyond its municipal borders.
In light of the foregoing, it cannot be fairly said that the Act was an act of general applicability to all Connecticut municipalities. Based upon the language of the Act, the undisputed facts regarding Bristol's need for the legislation, the CDEP Consent Order and the legislative history of Special Act 96-12, there is no question that the Act was legislation specially drafted for the local, municipal concerns of Bristol. Having determined that the Act was special legislation as referred to in General Statutes § 2-14, this court must next decide whether defendant's failure to comply with the requirements of § 2-14 renders Special Act 96-12 invalid.
2. Effect of § 2-14 on Special Act 96-12
Section 2-14 of Connecticut General Statutes proscribes the manner in which local legislation may be initiated. The defendant did not follow the mandates of this section. Thus, plaintiffs allege that Special Act 96-12 is invalid. The defendant insists that, notwithstanding a finding by the court that the Act is special legislation, failure to comply with General Statutes § 2-14 does not invalidate Special Act 96-12. For the reasons stated below, the court agrees with the defendant and finds that Special Act 96-12 is valid, despite Bristol's lack of conformity with the requirements of General Statutes § 2-14.
The Connecticut Supreme Court has stated that "one legislature cannot control the exercise of the powers of a succeeding legislature." (Internal quotation marks omitted.)Patterson v. Dempsey, 152 Conn. 431, 439, 207 A.2d 739 (1965) InPatterson, the General Assembly had passed a special act that directly conflicted with a previously enacted section of the General Statutes. The Court, in ruling that the conflict did not void the special act, stated that "[t]o the extent that the General Assembly failed to conform [the special act] to the provisions of § 2-35, those provisions were rendered ineffective." Id. The court went on to state that the General Assembly's enactment of the special act, which was repugnant to § 2-35, had the effect "of an affirmative enactment suspending, to the extent that the action violated § 2-35, the prohibitory part of § 2-35. . . . The effect is really CT Page 3805 that of repeal by implication." (Citation omitted.) Id.
In the instant case, the defendant failed to comply with General Statutes § 2-14 when it requested that the General Assembly enact Special Act 96-12. This failure, however, does not make Special Act 96-12 invalid. To the contrary, to the extent that the requirements of General Statutes § 2-14 were not adhered to, or are in conflict with the Special Act, those requirements are deemed ineffective as applied to Special Act 96-12. See, Patterson v. Dempsey, supra, 152 Conn. 439.
Indeed, in an action quite similar to the present one, this court (Sheldon, J.), relying on the decision in Patterson, held that the failure of the General Assembly to enact special legislation (in the form of a special act), in accordance with General Statutes § 2-14, did not void the special act. See,AFSCMA, Council 4, Local 681 v. West Haven, 43 Conn. Sup. 470,489, 662 A.2d 160, Aff'd, 234 Conn. 217, 661 A.2d 581 (1995)
(special act supercedes requirements of General Statutes § 2-14)
Therefore, this court finds Special Act 96-12 was validly enacted special legislation. The plaintiffs' cross-motion for summary judgment on count two of the verified complaint is denied and, the defendant's motion for summary judgment on count two is granted.
C. Constitutionality of Special Act 96-12
The plaintiffs next challenge the constitutionality of Special Act 96-12 on substantive due process grounds. Specifically, the plaintiffs aver that Special Act 96-12 "does not fairly and reasonably" preserve the peace, health and morals of the public because the Act "expressly permits Bristol to condemn [the plaintiffs' property interests] in order to pollute and contaminate their groundwater and subsurface soil." (Pls' Mem. Supp. p. 21.) They reason that because the contamination of the environment is not a legitimate governmental interest, the Act, under rational basis review, is unconstitutional.
The defendant does not squarely address the plaintiffs' claim that Special Act 96-12 is unconstitutional. It does, however, argue that the taking was constitutional because the taking was done for a valid public purpose. In light of the specific CT Page 3806 argument put forth by the plaintiffs regarding to the constitutionality of the Act, it is irrelevant that the defendant has failed to directly address the issue. There is sufficient evidence before the court to properly determine whether the Act is constitutional. In fact, in the instant case such a determination is necessary.[13]
"[A] party challenging the constitutionality of a statute must prove its unconstitutionality beyond a reasonable doubt. . . . While the courts may declare a statute to be unconstitutional, our power to do this should be exercised with caution, and in no doubtful case. . . . Every presumption is to be given in favor of the constitutionality of the statute." (Internal quotation marks omitted.) Blakeslee Arpaia Chapman,Inc. v. EI Constructors, Inc., 239 Conn. 708, 754, 687 A.2d 506
(1997)
Although it is somewhat unclear whether the plaintiffs have challenged the constitutionality of Special Act 96-12 under the due process clause of the fourteenth amendment to the federal Constitution, or article first, § 8 of the Connecticut Constitution, the plaintiffs' failure to clearly identify under which constitution the Act is allegedly invalid is not crucial to this court's analysis. This court finds Special Act 96-12 to be constitutional under both the federal and state constitutions.[14]
"The due process clause of article first, § 8 [of the state constitution], like the similar provision in the federalfourteenth amendment, provides for varying levels of judicial review to determine whether a state statute or regulation passes constitutional muster in terms of substantive due process." FairCadillac-Oldsmobile Isuzu Partnership v. Bailey, 229 Conn. 312,317-18, 640 A.2d 101 (1994). With respect to the standard of judicial review to be applied in this action, this court agrees with the plaintiffs' conclusion that the Act is subject only to rational basis review.
The court must judge the constitutionality of the Act as it would any other economic or social welfare legislation. "The court's function in examining the constitutional aspects of [economic or social welfare] legislation is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way." (Internal quotation marks omitted.) CT Page 3807Fair Cadillac-Oldsmobile Isuzu Partnership v. Bailey, supra,229 Conn. 318-19; Black v. Goodwin, Loomis Britton, Inc.,239 Conn. 144, 166, 681 A.2d 293 (1996). Consequently, Special Act 96-12
"must be reviewed in accordance with the rules that normally govern constitutional challenges of economic or social welfare legislation, by ascertaining whether the legislature has acted arbitrarily or irrationally." (Internal quotation marks omitted.)Fair Cadillac-Oldsmobile Isuzu Partnership v. Bailey, supra,229 Conn. 318.
"Even under this less exacting test of constitutionality, [economic or social welfare] legislation will survive a substantive due process test only if it is both rational and related to a legitimate state purpose." (Citation omitted; internal quotation marks omitted.) Black v. Goodwin, Loomis Britton, Inc., supra, 239 Conn. 166. If the enactment meets this test, it satisfies the constitutional requirements of due process. Fair Cadillac-Oldsmobile Isuzu Partnership v. Bailey,supra, 229 Conn. 319.
"The guarantee of substantive due process requires that a law be reasonable, rather than arbitrary and capricious, and that its operation has a real and substantial relation to the object to be obtained." (Citation omitted; internal quotation marks omitted.)State v. Matos, 240 Conn. 743, 749, 694 A.2d 775 (1997)
The plaintiffs have not challenged the validity of the Consent Order of the CDEP. Nor have they posited that the Consent Order is not in furtherance of valid and legitimate environmental goals. Therefore, this court is entitled to rely on the presumption in favor of viewing the Consent Order as an instrument created for the benefit of the state.
The Consent Order mandated Bristol to acquire water rights for all the water contaminated by its landfill. The purpose of Bristol's acquisition of the aforementioned property rights and interests was to enable it to undertake certain investigations and studies with regard to the level of contamination in the groundwater. (Parties' Stip. Ex. B.) By doing so, Bristol, at some point in the future, would be able to present plans and proposals to the CDEP for the remediation of the groundwater contamination. (Parties Stip. Ex. B).[15] Compliance with the Consent Order provides the opportunity to maintain and possibly ameliorate the level of water contamination caused by Bristol's CT Page 3808 landfill. Complying with the Consent Order and thus fulfilling its objectives is in the interests of the public and serves a valid purpose.
The Act allows Bristol to adhere to the CDEP directives by conferring upon it the rights it requires in order to condemn property rights outside of its borders. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1996 Sess., p. 1948-49; 39 H.R. Proc., Pt. 6, 1996 Sess., p. 1929-31.
Legislative authorization to condemn property located beyond a municipality's borders is an exceptional and significant power. The legislature's limitation on the applicability of Special Act 96-12 to those municipalities that were issued Consent Orders between August 1, 1995 to December 31, 1995, guards against potential future abuses of the power and was rationally related to the Act's legitimate purpose.
Enacting Special Act 96-12 was a reasonable exercise of legislative authority for a legitimate governmental purpose. Accordingly, it is constitutional under both the state and federal constitutions.
The plaintiffs' cross-motion for summary judgment for count three of the verified complaint is denied. The defendant's motion for summary judgment for count three is granted.
D. Constitutionality of Taking
The plaintiffs next contend that the condemnation of the plaintiffs' property interests was not done for a "public purpose," and thus the taking was unconstitutional. Specifically, the plaintiffs claim that the taking allows the defendant to continue to pollute the plaintiffs' property. Because the pollution of an individual's property is not a valid public use of property, plaintiffs conclude the taking must be unconstitutional.
The defendant responds that the taking was constitutional, notwithstanding the plaintiffs' characterizations, because the taking was done for a valid public use. The defendant reasons that "Bristol's taking of the [e]asement [r]ights was for a public use-to comply with the [CDEP] Consent Order for the closing of the [l]andfill and the concomitant remediation of the ground water contamination resultant from the leachate." (Def.s CT Page 3809 Mem. Supp. p. 9.) As such, it maintains that the taking was constitutional.
"It is fundamental that the state government or any properly designated agency thereof may take private property under its power of eminent domain, if the taking is for a public use and if just compensation is paid therefor. Conn. Const., Art. I, 11;Gohld Realty Co. v. Hartford, 141 Conn. 135, 141, 104 A.2d 365
(1954)." Russo v. East Hartford, 4 Conn. App. 271, 273-74,493 A.2d 914 (1985); Hiland v. Ives, 154 Conn. 683, 686, 228 A.2d 502
(1967).[16]
"In this State it is settled that public use means public usefulness, utility or advantage, or what is productive of general benefit; so that any appropriating of private property by the State under its right of eminent domain for purposes of great advantage to the community, is a taking for public use." (Internal quotation marks omitted.) Gohld Realty Co. v. Hartford,supra, 141 Conn. 141. "[A]s the power of eminent domain is an inherent sovereign right, the words `public use' in this connection are equivalent to `governmental use'. . . . The authority springs from no contract or arrangement between the government and the citizen whose property may be appropriated, but it has its foundation in the imperative law of necessity, and is recognized, and may be defended and enforced, upon the ground that no government could perpetuate its existence and further the prosperity of its people, if the means for the exercise of any of its sovereign powers might be withheld at the option of individuals." (Citation omitted; internal quotation marks omitted.) Connecticut College v. Calvert, 87 Conn. 421, 425,88 A. 633 (1913).
The defendant condemned the plaintiffs' property interests so that it could comply with the CDEP Consent Order. The CDEP Consent Order's primary purpose was to require Bristol to monitor, control and test the level of contamination within the "zone of influence," though both parties readily acknowledge that some continued contamination of the property could occur as an unavoidable incident to that purpose. The purpose of the taking was not to promote further pollution, though such continued contamination may be an incidental result. The condemnation of the plaintiffs' property interests was done for benefit of the general public, in that it was a necessary means to achieve the abatement of contamination emanating from the Bristol landfill. CT Page 3810 Because the abatement of contamination is certainly beneficial and of "great advantage" to the general public, the taking was done for a public use and was constitutional.
Similarly, for all of the reasons discussed in this decision regarding the purpose of the Act and the taking itself, the court rejects the plaintiffs' argument that Bristol's taking violates any environmental public policy of the state of Connecticut.
The defendant's motion for summary judgment is granted for count six and count seven of the verified complaint, and the plaintiffs' motion for summary judgment for those counts is denied.
E. Scope of Special Act 96-12
The plaintiffs next argue that Special Act 96-12 permits the defendant to take only ground water rights and therefore, the defendant's condemnation of easement and other property rights on the plaintiffs' property exceeds the express authorization of the Act, rendering the defendant's condemnation action ultra vires.
The defendant asserts that its actions were not ultra vires because the language in Special Act 96-12 expressly allows for the condemnation of "ground water rights and interests therein," which necessarily includes easement rights. (Emphasis added).
In resolving the present dispute, it is necessary to apply the well established rules of statutory construction. "When [the court] engages in statutory interpretation, [its] fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.)Connecticut Light Power Co. v. Texas-Ohio Power, Inc.,243 Conn. 635, 645, 708 A.2d 202 (1998). "Ordinarily, if the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.) Office of Consumer Counsel v. Dept. of Public UtilityControl, 246 Conn. 18, 29, 716 A.2d 78 (1998). "If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, we will seek guidance from extrinsic aids, e.g., the legislative history. . . ." (Internal quotation marks omitted.) Anderson v. Schieffer,35 Conn. App. 31, 40-41, 645 A.2d 549 (1994). "[E]ven if a statute is considered clear on its face, if a literal interpretation of CT Page 3811 that statute would lead to unworkable results, resort to other aids to determine legislative intent is appropriate." State v.Cain, 223 Conn. 731, 744, 613 A.2d 804 (1992)
Special Act 96-12 provides in relevant part: "Any municipal corporation having a landfill within its corporate limits, with respect to which landfill the Commissioner of Environmental Protection has issued an order . . . requiring such landfill to be closed and requiring the acquisition of ground water rights or interests therein as part of the closure, shall have the right to purchase ground water rights or interests therein which may extend beyond the corporate limits of such corporation. . . . If such municipal corporation cannot agree with any owner of real property upon the amount to be paid for ground water rights or interests therein, it shall proceed in the manner provided in section 48-12 of the general statutes to take such ground water rights or interests therein. . . ." Because this court finds that the language of the Act is somewhat vague, especially with respect to the meaning of the phrase "ground water rights or interests therein," the court looks to the Act's legislative history, in addition to the language of the statute itself, in order to discern its purpose and intent.
As indicated previously, there can be little doubt as to the intent and purpose of Special Act 96-12. The General Assembly enacted Special Act 96-12 in order to provide Bristol with the means to carry out the requirements of the Consent Order. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1996 Sess., p. 1948-54, 2400, 2402 (Bristol Mayor Frank Nicastro and Southington Town Counsel Attorney John Weischel argued together for the passage of the Act, so that Bristol would have the ability to comply with the CDEP Consent Order); 39 H.R. Proc., Pt. 6, 1996 Sess., p. 1925-32.
The Consent Order required Bristol to acquire all of the ground water rights that were located within the specific "zone of influence". It required Bristol to gain control of such ground water interests, both within and without its municipal borders, as had become contaminated by the landfill.
Although the language of Special Act 96-12 does not expressly authorize a municipality to condemn easements, it is plain from the legislative history that the legislature contemplated that Bristol would have such statutory authority. The legislature passed Special Act 96-12 so that Bristol would have the ability CT Page 3812 to comply with every aspect of a CDEP consent order. One of the aspects of the CDEP's Consent Order was that Bristol test, monitor, and evaluate the level of the contamination within the "zone of influence." (Parties' Stip., Ex. B.) These functions could not be carried out unless Bristol had access to the contaminated properties. Therefore, Special Act 96-12 must be construed to permit this.
Moreover, our courts have "traditionally eschewed construction of statutory language that . . . thwarts its manifest purpose." Sutton v. Lopes, 201 Conn. 115, 121,513 A.2d 139, cert. denied sub. nom., McCarthy v. Lopes,479 U.S. 964, 107 S.Ct. 466, 93 L.Ed.2d 410 (1986). In the present action, to find by way of statutory construction that the legislature had excluded the power to condemn easements on the plaintiffs' property, which is necessary for the effectuation of CDEP consent directives, would be to utterly disregard the purpose and intent of the Act. This court views such a finding as neither warranted nor appropriate. See, Bristol v. Vogelsonger,21 Conn. App. 600, 604, 575 A.2d 252,cert. dismissed, 212 Conn. 811,564 A.2d 1072 (1990) (court bound to construe condemnation statute so as to give it common sense meaning). Accordingly, this court holds that the defendant's taking in this action did not exceed the scope of Special Act 96-12.
The plaintiffs accurately point out that "the authority to condemn property is to be strictly construed in favor of the owner of property and against the condemnor." (Pls' Mem. Supp. p. 4-5); see Simmons v. State, 160 Conn. 492, 500, 280 A.2d 351
(1971). Though not disputing the veracity of the plaintiffs' claim, in light of the admonition by the Connecticut Supreme Court that a condemnation statute "should not be interpreted in such a way as to thwart the purpose for which it was enacted,"[17] this court will not construe the applicability of Special Act 96-12 so narrowly as to render its purpose ineffective.
The plaintiffs' cross-motion for summary judgment with respect to counts one and four of the verified complaint is denied, and the defendant's motion for summary judgment with respect to counts one and four is granted.
F. General Statutes § 8-129
CT Page 3813
Finally, the plaintiffs claim that because General Statutes § 8-129 expressly provides that a municipality may take only a fee simple interest in private property, Bristol's taking of easement interests in the plaintiffs' property is statutorily prohibited.
The defendant responds that because General Statutes § 8-129 is a procedural statute only, its incorporation by reference into Special Act 96-12 cannot effect the Act's substantive applications. Alternatively, the defendant argues that the legislature has the authority to determine to what extent property may be taken, and in this action, the legislature provided for takings of less than a fee interest.
"[T]he power of eminent domain, is one of the `attributes of sovereignty, inherent and necessary to the existence of every government, and the exercise of [this power], its mode, form and extent, within constitutional requirements, is unlimited."Conners v. New Haven, 101 Conn. 191, 195-96, 125 A. 375 (1924) Moreover, "the power to take private property for public use, and the mode of [the] exercise may at any time be changed by the sovereign authority." Id. at 196.
The Connecticut Supreme Court has clearly stated that "[i]t is within the province of the legislature to determine both thequantity and quality of the estate which a condemnor may acquire." (Emphasis added.) Northeast Gas Transmission Co. v.Collins, 138 Conn. 582, 592, 87 A.2d 139 (1952). Furthermore, the legislature may authorize the taking of a "fee or an easement," or it may "authorize the taking of an interest which is either permanent or temporary." Id. at 592.
There is no prohibition against a legislature authorizing the taking of less than a fee interest in private property. The legislature's use of the language "ground water rights or interests therein," can be reasonably construed as authorizing the condemnation of less than a fee interest in the plaintiffs' property interests, especially when viewed in light of the legislative history of the Act. Accordingly, the defendant's taking did not violate General Statutes § 8-129.
The plaintiffs' cross-motion for summary judgment upon count five of the verified complaint is denied. The defendant's motion for summary judgment upon count five is granted. CT Page 3814
IV CONCLUSION
The plaintiffs' have presented emotionally compelling, though ultimately, legally untenable arguments. In the final analysis, the plaintiffs' arguments must fail when tested against the constitutional, statutory and common law principles which govern this case. The application of the law in this case mandates that the defendant prevail because its actions are within the scope of Special Act 96-12 which is valid and constitutional. For all of the above reasons, the defendant's motion for summary judgment with respect to the verified complaint is granted in its entirety. The plaintiffs' cross-motion for summary judgment with respect to the verified complaint is denied in its entirety.
It is so ordered.
ANGELA CAROL ROBINSON JUDGE, SUPERIOR COURT