[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Back Bay Restaurant Group, Inc., from a declaratory ruling issued by the defendant, State of Connecticut Department of Labor ("the Department"), concluding that the Department's regulations on the "tip credit" for restaurant employees were valid. The plaintiff sought its declaratory ruling under General Statutes § 4-176
and on issuance of the declaratory ruling took an appeal pursuant to § 4-183.
The specific declaratory ruling sought was stated as follows: "Regulation 31-62-E2 (c) and (d) should . . . be invalidated to the extent it denies employers the minimum wage credit for employees who serve food at a bar or counter rather than a table or booth because this distinction is made on the basis of platform at which a patron is served rather than the employee's actual job duties." (Return of Record ("ROR"), Item 1, p. 5.)
The following relevant facts were set forth by the Department in the declaratory ruling now being challenged:
 1. Section 31-60 (b) of the Connecticut General Statutes requires the Department of Labor to adopt regulations recognizing certain gratuities as part of the minimum wage. Specifically, this section provides in relevant part as follows:
 The Labor Commissioner . . . shall make such regulations as may be appropriate to carry out the purposes of this part. Such regulations . . . shall recognize, as part of the minimum fair wage, gratuities in an amount equal to twenty-three percent of the minimum fair wage per hour for person employed in the hotel and restaurant industry.
 2. Pursuant to this statutory provision, the Connecticut Department of Labor issued Regulation § 31-62-E2 (c) and (d), effective November 25, 1958.
 3. This Regulation distinguishes a "service" employee from a "non-service" employee. A service employee CT Page 11081 is defined as "any employee whose duties relate solely to the serving of food and/or beverages to patrons seated at tables or booths and to the performance of duties incidental to such service, and who customarily receives gratuities." § 31-62-E2 (c) and (d). A non-service employee is defined as "an employee other than a service employee, as herein defined. A non-service employee includes, but is not limited to, countergirls, counterwaitresses, countermen, counterwaiters and those employees serving food or beverages to patrons at tables or booths and who do not customarily receive gratuities as defined above." § 31-62-E2 (c) and (d).
 4. Pursuant to this Regulation, an employer may recognize as part of the minimum wage, gratuities received by a service employee up to 23% of the minimum fair wage. No recognition or credit toward the minimum fair wage may be taken with respect to gratuities received by a non-service employee.[1]
 5. The Connecticut Department of Labor's Guide for Restaurant Employers in Connecticut describes the typical duties of a service employee as follows:
(a) Taking food and beverage orders from patrons.
(b) Bringing the orders to the table or booth.
(c) Cleaning up the immediate area of service.
 (d) Filling the condiment containers at the tables or booths.
(e) Vacuuming their own immediate service area.
 (f) Replacing the table setting at their own service area.
 6. The Connecticut Department of Labor's Guide for Restaurant Employers in Connecticut describes the typical duties of a non-service employee as follows:
(a) Cleaning the rest rooms. CT Page 11082
(b) Preparing food.
(c) Washing dishes.
(d) Host or hostess work.
(e) General set-up work before the restaurant opens.
(f) Kitchen clean-up.
(g) General cleaning work.
(h) Waiting on takeout customers.
 7. Petitioner has employees at its restaurants who work primarily behind the bar, which is a long counter with bar stools around it.
 8. A bartender's job duties consist solely of serving food and beverages to customers at the bar, and duties incidental thereto, including:
(a) Bar set up.
 (b) Preparation of alcoholic and non-alcoholic beverages and the opening of beverage containers for services to customers.
 (c) Serving of beverages to customers sitting or standing at the bar.
 (d) Serving of food orders to customers seated or standing at the bar.
 (e) Waiting on tables for food and beverage service in the lounge area, when waitpersons are not available.
 9. Bartenders at petitioner's restaurants customarily receive gratuities for serving food and beverages to customers standing or seated at the bar or in the lounge area.
 10. Because these bartenders' duties are overwhelmingly for the benefit of patrons standing CT Page 11083 or seated at the bar, and not patrons "seated at tables and booths," petitioner is unable to avail itself of a credit toward satisfying the minimum fair wage.
(ROR, Item 23, pp. 3-5.)
Based upon these facts, the Department concluded as follows: "[T]he regulations at issue in this ruling are not invalid as they apply to bartenders because the petitioner has not demonstrated: 1) that bartenders meet the strict definition of "service" employee; 2) that the regulatory distinction between "service" and "non-service" employee is arbitrary because it is based exclusively on the size and shape of the platform at which patrons are served rather than the actual duties performed; 3) that the actual duties performed by bartenders for patrons at the bar are substantially the same as the duties performed by "service" employees for patrons seated at "tables or booths;" or 4) that it should be able to avail itself of the tip credit for those bartenders' occasional duties of a "service" nature despite failing to segregate and record those duties in accordance with Conn. State Agencies Regs. §31-62-E4." (ROR, Item 23, p. 13.)
The plaintiff has appealed from the Department's conclusion that the regulations distinguishing between service employees and non-service employees are valid.[2]
The standard of review of the declaratory ruling, as it involves interpretation of regulations, has been set forth in the case ofBridgeport Hospital v. Commission on Human Rights Opportunities,232 Conn. 91 (1995). "We recognize our usual rule of according deference to the construction given a statute by the agency charged with its enforcement. . . . Deference may be appropriate when the issue is the application of general statutory language to a particular fact-bound controversy. As we have stated many times, the factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts. . . . however, it is for the courts, and not for administrative agencies, to expound and apply governing principles of law." (Brackets omitted; citations omitted; internal quotation marks omitted.) Id., 109. "Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion. . . ." (Citations omitted.) United Parcel Service, Inc. v. Administrator,209 Conn. 381, 385-86 (1998).
The first claim made by the plaintiff is that the General Statutes CT Page 11084 § 31-60 (b) does not authorize the regulations at issue. It is true that "[t]he power of an administrative agency to prescribe rules and regulations under a statute is not the power to make law, but only the power to adopt regulations to carry into effect the will of the legislature as expressed by the statute. . . ." (Citations omitted; internal quotation marks omitted.) Breen v. Department of LiquorControl, 2 Conn. App. 628, 635, cert. granted, 194 Conn. 808 (1984), remanded, 5 Conn. App. 432 (1985). It becomes necessary to examine §31-60 (b), as well as its "legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation" to arrive at will of the legislature. General Motors Corp. v. Dohmann, 247 Conn. 274,286 (1998).
The statute came into effect through enactment of Public Act 1951, No. 51-352, § 10(b) providing: "The labor commissioner, after consultation with a board composed of not more than three representatives each of employers and employees in the occupation or industry affected and of an equal number of disinterested persons representing the public, shall make such administrative regulations as may be appropriate to carry out the purposes of this act and [specific sections] of the general statutes. Such regulations . . . may recognize as part of the minimum fair wage . . . gratuities. . . ."
In the General Assembly's Labor Committee prior to the passage of the Public Act, a representative of the Connecticut restaurant association described that there were some restaurants where workers take on all tasks — "porter, dishwasher, cook, waiter and cashier." Conn. Joint Standing Committee Hearings, Labor, 1951 Sess., p. 106. The minimum wage of seventy-five cents was not enough for them. Then there were "wages of . . . waiters and waitresses . . . to a large extent dependent on gratuities. Our laws have been in existence for a long time. Payment of overtime and the abolition of gratuities will revise the restaurant industry tremendously." Conn. Joint Standing Committee Hearings, Labor, 1951 Sess., p. 107.
In the House of Representatives proceedings, the Chairman of the Labor Committee, Simon S. Cohen, explained the Public Act prior to its approval in part as follows: "This bill would create a minimum wage of 75 cents per hour by statute. . . . Provision is made whereby the commissioner, with the advice of the board appointed for that purpose, may establish administrative regulations recognizing unusual conditions of employment. And such regulations may also recognize conditions . . . where compensation is based in part on commissions and bonuses or special pay for special or extra work . . ." 4 H.R. Proc., Pt. 5, 1951 Sess., p. 1307. CT Page 11085
The statute was unchanged in the 1953 and 1955 legislative sessions. In 1957, the minimum wage was increased to one dollar, but was left at seventy-five cents for restaurant employees. Public Act 1957, No. 57-435, § 5. The 1959 legislature saw an effort to raise the minimum wage for restaurant employees to one dollar. In addition, this proposed legislation attempted to remove the credit that might be taken from the minimum wage for gratuities. Labor Commissioner Ricciuti appeared before the Labor Committee on February 15, 1959, to speak in favor of eliminating the gratuity credit. "The bill also seeks to eliminate from the minimum wage law the provision under which the employers can deduct from the minimum wage for gratuities — that is for tips. [W]hen you go into a restaurant . . . why [should] that tip indirectly go into the pockets of the employer. . . . and this bill would eliminate the provision of the minimum Wage Law which now makes it possible." Conn. Joint Standing Committee Hearings, Labor, 1959 Sess., pp. 78-79. "[In a controversy with one employer], [t]he waiters themselves have 35¢ an hour deducted for gratuities per hour. These waiters have the services of busboys who help them clear tables and bring the dessert or something like that. In addition to having the 35¢ deducted from their wages, the waiters also have to pay for the tips which go to the busboys. In other words, they're getting a double deduction. . . ." Conn. Joint Standing Committee Hearings, Labor, 1959 Sess., pp. 78-79.
As might be expected, the restaurant association opposed the proposal to eliminate the gratuity credit. The industry had no problem in paying the full minimum wage to countermen, chefs, cooks or bartenders. "The fly in the ointment is on waiters. . . . The bartender has to know how to mix his drinks. The waiter brings this in and he serves it to you and when you are talking about doing away with gratuities, you're doing away with something that is not only a Connecticut practice, a national practice but an international practice." Conn. Joint Standing Committee Hearings, Labor, 1959 Sess., pp. 87-88 (H.A. Genlot).
In the end, the legislature in Public Act 1959, No. 59-683 did not eliminate the credit, but, instead of merely using the term "gratuities," set the amount of the credit at thirty-five cents. It also raised the minimum wage for restaurant workers to one dollar. "This bill has two purposes to correct certain inequities which exist under the present Min. Wage Laws of the state and to make some technical corrections in the present law which would aid in its administration. One inequity concerns restaurant and hotel employees. This bill proposes to bring them within the min. wage rate of $1 an hour. Restaurant and hotel workers were included when the statutory rates were fixed at 75¢ an hr. in 1951, but were excluded when it was raised to $1 in 1957. The committee feels there is no reason for excepting these workers from the full raise and CT Page 11086 the exclusion from this law is discriminatory!" 8 H.R. Proc., Pt. 13, 1959 Sess., pp. 6086-87.
In subsequent years, the amount of the credit was increased, eventually to sixty cents. In 1980, by Public Act 1980, No. 80-64, it was changed to 23% of the hourly wage. While the committee chairman on the floor of the House of Representatives described the bill that became law as worthy of passage, Representative Otterness disagreed: "I'd just like to briefly remark that I felt it was a very bad bill last year, and it hasn't really improved very much. I think the part that does reduce the forty-eight to forty hours for overtime is definitely an improvement, but I don't think that it is enough to overcome the part that we're doing in the first part, which is really an erosion of the minimum wage. And if we believe that people should have a minimum wage, then I think we should vote against this bill. And I think that we should also consider the fact that this is impacting on women. Mostly women who are in entry level jobs, who are coming back into the work force." 23 H.R. Proc., Pt. 3, 1980 Sess., p. 861. Later in the debate, Representative Balducci sought to diffuse these concerns: "[T]his bill is more or less a package and a compromise that has been worked out in which forty eight hours has been lowered or changed to forty hours, and a percentage or an index replacing the sixty cents which had previously been the method of removal on wages for waitresses." 23 H.R. Proc., Pt. 3, 1980 Sess., p. 865.
On the floor of the House of Representatives in 2000, while raising the minimum wage, an amendment was adopted that eventually became P.A. No. 00-144. Section 31-60 (b) of the General Statutes, in its current form, authorized the Labor Commissioner to adopt appropriate regulations recognizing "as part of the minimum fair wage, gratuities in an amount equal to twenty-three per cent of the minimum fair wage per hour for persons employed in the hotel and restaurant industry. . . ." The effect of the amendment on General Statutes § 31-60 (b) has been summarized by the Office of Legislative Research as follows: "The law requires state Labor Department regulations to grant restaurants and hotel employees a 23% credit against the minimum wage for tipped employees. As a result of the credit, they currently pay tipped employees $4.74 per hour. The act requires those regulations to freeze the amount at $4.74 until January 1, 2003, when the employers must pay $5.16 ($6.70 minus 23%). It requires employers to pay bartenders who regularly receive tips $6.15 per hour until January 1, 2003, when they must receive $6.70."[3] Summary of 2000 Public Acts, Connecticut General Assembly, Office of Legal Research, p. 202.
In the House of Representatives, Representative Prelli, an opponent of the amendment that became P.A. No. 00-144, asked the following of Representative Donovan, the proponent: "[I]f the bartender was working at CT Page 11087 a bar standing behind the bar mixing drinks, and as part of that somebody sitting at the bar decided to have something to eat, would that bartender now be considered a waitress?" Representative Donovan replied: "no." 43 H.R. Proc., Pt. 10, 2000 Sess., p. 3211.
This extensive review of the text of § 31-60 (b) as well as the statute's legislative history indicates that the credit for gratuities developed as a compromise between the restaurant owners favoring an expansion of the credit and others opposed to decreasing the minimum wage in the restaurant industry. It also shows that up until the 2000 session, there was a clear intent by the legislature to differentiate between service and non-service employees. Even in the recent legislation, Representative Donovan's reply shows that the basic difference between a bartender and wait staff continues, including where and how the meal is served.
Therefore, the plaintiff's challenge to the regulations based on lack of authority must fail. Section 31-60 (b), both as originally drafted in 1951 and in its present form, authorizes the Labor Commissioner to issue regulations recognizing gratuities in the hotel and restaurant industry. It was within this broad delegation of power for the commissioner to issue the regulations defining service and non-service employees. Further, the Department was authorized under the delegation received from the legislature to exclude from the definition of service employee bartenders that serve food. Dadiskos v. Liquor Control Commission,150 Conn. 422, 427 (1963).
The second issue raised by the plaintiff is that the definitions set forth in the regulations are irrational and arbitrary because the definition of service employee "exclude[s] bartenders on the basis of where the patrons receive their food and drink, rather than on the basis of the employee's duties." (Petitioner's Brief, p. 9.)[4] In deciding this issue, "the court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. . . . In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification . . . the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decision maker . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. . . . Thus, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. . . . In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any CT Page 11088 reasonably conceivable state of facts that could provide a rational basis for the classification." (Brackets omitted; citations omitted; internal quotation marks omitted.) Kostrzewski v. Commissioner of Motor Vehicles,52 Conn. App. 326, 341-42 (1999); Luce v. United Technologies Corp.,247 Conn. 126, 143-44 (1998). This standard of review applies equally to a rationality challenge to an agency regulation. Citerella v. UnitedIlluminating Co., 158 Conn. 600, 608 (1969); Abington Constructors, Inc.v. Department of Consumer Protection, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 555498 (December 17, 1996, McWeeny, J.).
The Department's declaratory ruling gave the follow reasons for the distinction between the wait staff and a bartender: "[I]t must be noted that the actual duties incidental to each type of service vary considerably. In contrast to "services employees, bartenders engaging in "non-service' duties are responsible for the setup, maintenance and upkeep of the bar, the stocking of the bar with adequate supplies of alcoholic and non-alcoholic beverages, and the preparation of beverages to be served to patrons. These duties materially differ from the duties performed by their "service' employee counterparts, and justify the distinction created by the regulations at issue in this declaratory ruling." (ROR, Item 23, p. 12.)
On the specific issue of the bartender who also serves meals the Department stated in the declaratory ruling: "There is also a noteworthy distinction in terms of gratuity compensation for bartenders and waitstaff who are engaged in the same "service' duties to patrons seated at `tables or booths.' Generally, gratuities from these patrons are provided directly to waitstaff rather than to the individual bartenders who prepared the beverages. As a result, bartenders do not receive an amount of gratuities which is comparable to their "service' employee counterparts for the same type of "service" employee duty. The decreased opportunity for gratuities from patrons seated at "tables or booths' provides additional justification for the regulatory prohibition on the payment of less than the minimum wage to bartenders." (ROR, Item 23, p. 13.)
The justification of different duties and "decreased opportunities for bartenders" as set forth by the Department is sufficient to meet the rational basis test of Kostrzewski and Luce, quoted above. The agency has sufficiently "educated itself' on the restaurant industry and properly issued the definitional regulations. Salmon Brook Convalescent Home v.Common Hosp. Health Care, 177 Conn. 356, 364 (1979).
The Department also suggested that the plaintiff had challenged the regulations defining service and non-service employees without attempting CT Page 11089 to follow the segregation procedure set forth in Regulation § 31-62
E4. This regulation attempts to ameliorate any hardship to the employer that might arise in the applying of the regulations to individual business situations. "It is unrealistic to demand detailed standards which are impracticable or impossible. . . . As the complexity of economic and governmental conditions increases, the modern tendency is liberal in approving broad regulatory standards so as to facilitate the operational functions of administrative boards or commissions." Morgan v.White, 168 Conn. 336, 348 (1975); Forest Construction Co. v. Planning Zoning Commission, 155 Conn. 669, 679 (1967).
In holding the Department's action in 1955 in setting the tip credit at thirty cents not irrational, Justice Baldwin well summarized why the plaintiff's challenge must fail here too. "The statute is one of broad application. It comprehends a wide variety of ways and means of furnishing remuneration for services rendered. An administrative agency must, of necessity, deal with specific classes of cases. Any statute empowering it to act could not possibly be drawn to meet every exceptional situation. . . . It is true that there is a wide range in the amounts collected in tips in the several callings where such gratuities are usually given. So, also, there is a wide range in the type and quality of the service rendered. Some workers will always earn more than others. It is sufficient if the statute and the regulation are reasonably designed to make sure that no one receives less than the prescribed minimum. There is nothing in the record to indicate that the . . . defendant was moved by any consideration of partiality or that an earnest effort was not made to arrive at a just apportionment of the amount of gratuities to be included in the minimum wage." (Citations omitted.) West v. Egan, 142 Conn. 437,444-45 (1955).
Based on the foregoing, the plaintiff's appeal is dismissed.
Henry S. Cohn, Judge